341 So.2d 1346 (1976)
Addie T. GIROIR et al.
v.
PANN'S OF HOUMA, INC., d/b/a Pann's Food Service Inc., et al.
No. 10935.
Court of Appeal of Louisiana, First Circuit.
December 30, 1976.
Rehearing Denied February 14, 1977.
*1347 C. J. Marcel, Jr., and Gerald P. Theriot, Houma, for plaintiffs and appellees.
W. K. Christovich and John T. Holmes, New Orleans, for defendants and appellants.
Before LANDRY, COLE and CLAIBORNE, JJ.
CLAIBORNE, Judge.
Mrs. Loritta Giroir slipped and fell in defendant's fried chicken restaurant and was injured. She was taken to Terrebonne General Hospital where she died seventeen days later.
The plaintiffs, Addie T. Giroir and his son and daughters, brought suit as surviving beneficiaries and heirs of the decedent for her wrongful death, her pain and suffering, and for special damages for medical and funeral expenses and attorney fees for decedent's succession.
After trial of the matter, judgment was rendered in favor of plaintiffs and against defendants in solido as follows:

*1348
1. To Addie T. Giroir
 a. Special damages $ 1,143.90
 b. Wrongful death 50,000.00
 c. Survival action 2,833.33
 ____________
Total $ 53,977,23
2.To each of the following five
 children: Thomas Giroir, Murina
 Giroir Fanguy, Barbara Jean Giroir,
 Elaine Giroir Herbert, and Betty
 Giroir Trahan:
 a. Wrongful death $ 10,000.00
 b. Survival action 2,833.33
 ___________
Total (each) $ 12,833.33
Total (5 five children) $ 64,166.65
Total Judgment $118,143.88

On plaintiffs' motion, the judgment was amended to correct errors in styling not altering the substance of the judgment. The judgment was further amended to limit the total liability of Continental Insurance Company to $100,000.00, its policy limits. Defendants' motion for a new trial was denied. This appeal followed.
Appellants assign as error the following:
(1) The finding of the trial court that decedent slipped and fell on a foreign and dangerous substance;
(2) The finding of the trial court that the defendant restaurant had actual or constructive knowledge of the substance on the floor;
(3) The finding of the trial court that decedent died as a result of the injuries sustained in the fall;
(4) The award of the trial court was excessive and constituted an abuse of discretion.
Appellants contend that Addie Giroir's answers to certain interrogatories are judicial admissions which prevent his later and differing trial testimony from establishing the cause of his wife's fall.
Appellants rely most strongly on interrogatory No. 1(d) and interrogatory No. 9, which asked respectively for a complete description of the substance after the fall had occurred and whether either Mr. or Mrs. Giroir had seen the substance prior to the accident. Mr. Giroir answered to both that he had not noticed the substance. However, at trial, he testified that he noticed, after his wife had fallen, a small piece of chicken crumb on the bottom of her sandal.
Appellants' contention, that the testimony concerning the chicken crumb cannot be considered, is erroneous. LSA-C. C.P. Art. 1513 provides for sanctions which the trial court may impose for failure to comply with orders made, inter alia, under LSA-C.C.P. Art. 1511, dealing with written interrogatories. While Article 1513 gives trial courts the power to disallow testimony where it is at odds with answers to interrogatories, whether or not an order has been sought under Article 1511, this power is discretionary with the trial court. Johnson v. Petit, 236 So.2d 304 (La.App. 3rd Cir. 1970). If the trial court elects to hear the testimony and weigh it together with the answers to interrogatories, then in the absence of an abuse of the discretion granted under Article 1513, there is no appealable error.
Further, such answers are not to be construed as judicial admissions nor as full and final proof against the plaintiff. LSA-C.C. Article 2291, dealing with judicial confessions, does not apply as a rule to interrogatories except where they have been used pursuant to LSA-C.C. Article 2275 to establish title to immovable property. Parol evidence in the form of later testimony is inadmissible in such a situation, but where oral testimony is admissible, answers to interrogatories are to be considered as any other evidence in the case, without necessarily excluding trial testimony. Fontenot v. Ludeau, 191 La. 540, 186 So. 21 (1939).
Since the testimony of Mr. Giroir concerning the substance on his wife's sandal was properly considered by the trial court, we reject appellant's contention that plaintiff failed to establish the existence of a foreign substance. Other testimony established that chicken crumbs were sometimes towelled onto the floor from tables and tracked into the dining area from the kitchen. We find no abuse of the trial court's discretion in finding that plaintiffs had borne their burden of establishing the existence of a foreign substance on which the decedent slipped.
*1349 In a slip and fall case, once the plaintiff has established that a foreign object or substance on the floor caused the slip, fall, and resultant injury, the burden then shifts to the defendant to go forward with the evidence to exculpate itself from the presumption that it was negligent. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976).
The duty of a store owner to protect his customers from foreign substances on the floor is one of reasonable care under the circumstances. Reasonable protective measures, including periodic inspections, must be taken to keep the aisles and floors free of substances that may cause customers to fall. Gonzales, supra.
Testimony of the restaurant manager established that the regular clean-up procedures consisted of sweeping the floors twice a day, once after lunch, between 2:00 and 2:30 P.M. and again at closing time. Additionally, the cashiers had the duty of cleaning table tops after departure of each customer by wiping the debris off table tops into their hands or into a towel.
Tony Garofolo, the cook, testified that he has noticed fried chicken batter on the floor when he cleans. The cashier also testified that sometimes scraps would fall from the tables when she cleaned them; sometimes she would sweep them up, sometimes not. On the day of the accident, she testified she was certain that someone swept the floor after lunch. The accident happened around 7:00 P.M.
We conclude that defendants have not borne the burden of proving that they exercised reasonable care in keeping the floor free of material which might cause customers to fall. Where, as here, the specialty of the house is fried chicken, with the observed tendency of its greasy batter to flake off, sweeping the floor twice each business day is insufficient to insure that the floors will be kept reasonably clean. Where the color and pattern of the floors make detection of the foreign matter more difficult, there is an even greater duty of cleanliness.
Plaintiffs offered the testimony of three doctors to establish the cause of death. Although decedent had been admitted to the hospital by Dr. Richard Landry, Dr. Roy St. Martin, general practitioner, was called in the day after the patient's injury and admittance because of a lower intestinal problem for which he had previously treated her. He continued to see her throughout her stay in the hospital while Dr. Landry, who was in charge of the case, continued to treat her for her injury including the prescription of medication for pain. He stated she was in pain the whole time she was in the hospital. She was having so much pain it was thought she might have a ruptured disc, and a myelogram was performed.
The decedent was shown to have had several operations and medical problems in the past, none of which were related to the accident or her death.
Because the autopsy showed certain heart abnormalities, an effort was made to suggest that her death might have been due to a coronary problem. Dr. St. Martin, who had been Mrs. Giroir's physician "on and off" since 1961, stated that he had never treated her for a heart problem because she never had any heart problems at the time she came to see him. The evidence of all three doctors eliminated serious consideration of heart disease as a cause of death.
Dr. W. A. Marmande, another general practitioner, saw the patient in Dr. St. Martin's absence. He was present for the last twenty-five minutes of decedent's life, and testified that cardiac infarction could not be considered a cause of death. In his opinion, death was caused by pulmonary embolism, a blood clot in the pulmonary artery. He testified that pulmonary emboli could occur without finding thrombophlebitis, even though that might have been the origin. Although the autopsy report disclosed no clots in the veins, this could have been the source. He indicated that there are more cases of pulmonary emboli where no source can be found, than cases where thrombophlebitis is found.
Dr. Richard Landry, an orthopedic surgeon, testified that on examination, Mrs. *1350 Giroir had pain at the extremes of rotation of her left hip and on palpation about the posterior aspect of the hip. Although the x-rays did not reveal a fracture, it was his impression she might be suffering from an occult fracture of the hip, for which he recommended admission to the hospital and treated her "expectedly". Treatment included putting the patient to bed with traction on her left leg. He saw the patient about four or five times during an eleven-day period. On the eleventh day, traction was removed; the hip was less painful, and she was walking fairly well. She did have some abdominal discomfort and low back pain. Dr. Landry was leaving town and asked her family physician, Dr. St. Martin, to follow her in his absence. She died, before his return, on September 6, 1972.
The foregoing is a digest of all the medical evidence upon which the trial court found that the death of the patient was causally related to the injury. In this conclusion, the trial court was in error, as such evidence does not include an opinion on the cause of the pulmonary embolism.
Dr. Richard Landry's opinion as proof of cause of death was offered. The trial court ruled it inadmissible on the ground that he was not present at the time of death, nor did he examine the decedent post-mortem. However, Dr. Landry was qualified as an expert in orthopedic surgery. An expert may base his opinion on an autopsy report without having himself performed it. Jackson v. Travelers Insurance Co., 180 La. 43, 156 So. 169 (1934). We will consider his proffered testimony to determine whether, taken with the other medical evidence, it will sustain a finding that the plaintiffs have discharged the burden of proof on this point.
Dr. Landry testified the pathology report indicated cause of death was pulmonary embolism. He testified as follows:
"I feel that the injury which she sustained to her hip, with the required treatment, in her case which was bed-rest and traction, were predisposing factors which allowed formation of clots of blood in the veins which I have mentioned earlier. Then during the time that she left her bed to go to the bathroom, one of these larger clots came loose, traveled through the heart, lodged in the lungs, and caused her death. In answer to your question, I don't think that her injury caused the blood clot to go to the lungs or to form at the moment the injury occurred. However, it is very common for blood clots to form after injury of this type. In a sense that she was at bed-rest, I feel that the bed-rest was the factor that allowed this to happen."
Dr. Landry further testified that other final diagnoses shown on the autopsy report unquestionably were not related to the injury and the hospitalization, viz.: papillary carcinoma of the thyroid, chronic thyroiditis, scattered fibrous pleural and peritoneal adhesions, previous gall bladder surgery, appendectomy, hysterectomy and removal of ovaries. He added that the pulmonary emboli could have developed as a result of the injury and treatment.
We find that the testimony of Dr. Landry taken as a whole shows a causal connection between decedent's injury and subsequent death.
The evidence adequately substantiates the court's discretion in awarding damages.
The judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.