479 So.2d 1069 (1985)
Duma CORMIER a/k/a Dumas Joseph Cormier, Plaintiff-Appellee,
v.
Louis CORMIER, Curator of the Interdict, Duma Cormier, Defendant-Appellant.
No. 84-892.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1985.
*1070 Privat and Regan, Kenneth O. Privat, Crowley, for defendant-appellant.
Chappuis and Beslin, Denald A. Beslin, Rayne, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
*1071 LABORDE, Judge.
Duma Cormier instituted this proceeding to establish his filiation to Duma (Neg) Cormier, who is represented by his brother and curator, defendant Louis Cormier. After a trial on the merits, judgment was rendered in favor of Duma Cormier. Louis Cormier appeals the judgment which we affirm.
La.Civ.Code art. 209 establishes the cause of action for filiation by a child. As amended in 1982, it provides in pertinent part:
"A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article."
Appellant initially contends that the trial judge reversibly erred by allowing Duma, who enjoys a presumption of legitimacy, to institute an action to filiate himself to a man other than his presumptive father.[1]
Both parties acknowledge that Duma was born December 10, 1923, to Edith Martin, and that Martin was divorced from James Babineaux on July 27, 1923. Duma was thus born less than three hundred days after the dissolution of his mother's marriage to Babineaux, and is therefore presumed to have been conceived during that marriage. La.Civ.Code art. 185.[2] The husband of the mother is presumed to be the father of all children born or conceived during the marriage. La.Civ.Code art. 184. Applying the facts to articles 184 and 185, it is clear that Duma was, as appellant maintains, the presumptively legitimate offspring of Edith Martin's union with James Babineaux. But appellant's argument that Duma's presumptively legitimate status barred this proceeding must be rejected, for our Supreme Court recently addressed this same issue and concluded that "children who fall into one of the enumerated classes contained in Article 209 are not precluded from instituting a filiation action under that article, they are merely relieved of the obligation to do so by operation of law." Griffin v. Succession of Branch, 479 So.2d 324 (La.1985) (footnote omitted). The trial judge committed no error in allowing Duma to attempt to prove his biological filiation to Neg Cormier.
Appellant next complains that expert witnesses for Duma Cormier were improperly allowed to testify as to results obtained from blood tests which were not performed in strict accordance with LSA-R.S. 9:396, which provides:
"Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require."
(Emphasis added.) In this case, the mother (Edith Martin) was unavailable, having died previously. The tests made at plaintiff's insistence were performed on blood samples taken from the plaintiff, from Neg Cormier (the alleged father), and from the plaintiff's maternal aunt, Elodie Martin Cormier. We agree with appellant that the statute makes no provision for such a substitution *1072 for the blood of an unavailable mother. The question posed is whether the irregularity of the procedure and the admission of its results into evidence fatally flawed the judgment.
LSA-R.S. 9:396 is one of a series of provisions constituting the Uniform Act on Blood Tests to Determine Paternity (Uniform Act). It has been observed that our legislature intended, due to the nature of the subject matter, to provide a carefully regulated evidentiary procedure having precedence over laws of general applicability. McGowan v. Poche, 393 So.2d 278 (La. App. 1st Cir.1980). Any conclusion relative to paternity would be highly suspect if based exclusively on results of a blood test procedure varying substantially from the procedure contemplated by the Uniform Act. In McGowan, the First Circuit reversed a summary judgment for the defendant which had been based on an alleged exclusion of paternity as revealed by blood tests. The summary judgment, reasoned the First Circuit, had improperly deprived the plaintiff of an opportunity to cross-examine those who performed the tests. An issue of fact existed, and a summary judgment was inappropriate. The First Circuit also noted that the trial court had failed, contrary to the dictates of LSA-R.S. 9:397, to appoint experts to conduct the tests.
McGowan is easily distinguished from the instant case. The trial judge in this suit did not base his judgment exclusively on inappropriately administered tests. The Uniform Act is silent as to how a party attempting to establish filiation is to proceed where his mother is, as here, deceased or otherwise unavailable. In McGowan, the established procedure was flagrantly violated. More importantly, there are no indications that the judgment in this case was even partially based on blood test results. When error is detected, it must be weighed to determine whether such error is harmless or prejudicial. Naquin v. Maryland Casualty Company, 311 So.2d 48 (La.App. 3rd Cir.1975). To the extent the trial judge may have erred in admitting the results of the blood tests, he committed harmless error, for other proof is in evidence which, standing alone, is sufficient to sustain the judgment.
Appellant next complains that the judgment was based on inadmissible hearsay evidence. Our Supreme Court has held that there is an exception to the general rule against the admission of hearsay testimony in cases involving pedigree. Such hearsay evidence is admissible to prove not only descent and relationship, but also facts as to birth, marriage and death, and the dates when the events occurred. In re Gray's Succession, 201 La. 121, 9 So.2d 481 (1942). The Court has observed that pedigree is the history of family descent, which is transmitted from one generation to another by both oral and written declarations and by tradition. Unless proved by hearsay evidence, not competent in general issues, it cannot in most instances be proved at all. Succession of Anderson, 176 La. 66, 145 So. 270 (1932).
As is true of all exceptions to the rule barring hearsay evidence, the exception allowing introduction of evidence of pedigree is based on some inherent guarantee of trustworthiness.
"The circumstantial guaranty for trustworthiness, relative to declarations concerning pedigrees, as said by Prof. Wigmore, is found `in the probability that the "natural effusions" (to use Lord Eldon's often-quoted phrase) of those who talk over family affairs when no special reason for bias or passion exists are fairly trustworthy, and should be given weight by judges and juries, as they are in the ordinary affairs of life.' Their admissibility is, however, dependent also upon whether the statements were made before a controversy arose regarding the descent."
Anderson, 145 So. at 274. We will now review the evidence offered by several witnesses for the plaintiff to determine whether it falls within the foregoing rule.
Neg's next-door neighbor, Charles Arceneaux, testified that it was common knowledge in the community that Neg Cormier is *1073 the father of Duma Cormier. Charles Arceneaux is unrelated to the parties.
Willie P. Arceneaux, a former legislator and school board member, testified that it was common knowledge in the neighborhood that Neg and Duma Cormier were related as father and son. Willie P. Arceneaux is unrelated to the parties.
Austin Brasseaux worked as a bartender in Rayne. He testified that defendant Louis Cormier declared to him in 1946 that Duma was Neg Cormier's son. He also testified that it was common knowledge in the community that Duma was Neg Cormier's son. Brasseaux is unrelated to either of the parties.
Amy Broussard testified that Eve Cormier (the sister of Duma's mother) declared to her that Duma was Neg Cormier's son. Mrs. Broussard is unrelated to the parties.
Pamela Cormier Camino is the granddaughter of Arthur and Elodie Martin Cormier, and is Duma's first cousin. She and Duma both grew up in Arthur Cormier's home. She testified that she knows Neg Cormier very well, and that she once heard Neg declare to her neighbors that Duma was his (Neg's) son. She also testified that Neg addressed Duma as "mon garcon," which is French for "my son" or "my boy."
Alton Cormier also grew up in the same household as Duma. He testified that Neg Cormier came often to the house looking for Duma, asking: "Have you seen my son? Have you talked to my son?"
Duma's Aunt Elodie Martin Cormier testified that Duma was born in her home, and that Neg Cormier came to the house the day after Duma's birth. According to Elodie Martin Cormier, Neg declared to her that he had come to "see his son." She also testified that Duma and Neg addressed each other as "my son" and "Papa" respectively. Further, she testified that Duma addressed Neg's brothers and sisters as his aunts ("tantes") and uncles ("noncs").
Ida Cormier Stelly testified that Duma's mother, Edith, introduced Neg Cormier to others as Duma's father, and that Neg did not deny this. She also testified that Neg visited Edith on a daily basis when Edith was living next door to her. She also testified that she heard her grandparents talking, at the time of Duma's birth, about "Neg's little boy being born." Ida Cormier Stelly's mother and Neg Cormier were first cousins.
It is apparent from our review of the testimony of these eight witnesses for the plaintiff (there were twenty in all) that some of the evidence they provided fell within the strictures of the Anderson rule, and others did not. Those witnesses testifying only as to the knowledge of the community provided evidence which, standing alone, would not have rendered Duma Cormier's filiation to Neg Cormier more probable than not. Indeed, that evidence, absent some additional guarantee of trustworthiness not apparent from the record, may well have been inadmissible.
But Duma's relatives Ida Cormier Stelly, Pamela Cormier Camino, Alton Cormier, and Elodie Martin Cormier testified as to out-of-court declarations by family members which qualify as the inherently trustworthy "natural effusions" of family members to which the illustrious Professor Wigmore referred. As such, their testimony was admissible evidence in this filiation proceeding. Austin Brasseaux's testimony was similarly admissible.
The admissible testimony sufficed to satisfy the preponderance of evidence standard established in La.Civ.Code art. 209 for proof of filiation to an alleged living parent. Appellant's fourth assignment of error, in which he claims that the governing standard was not satisfied, is thus without merit.
We recognize that the substance of the testimony offered by plaintiff's witnesses was contradicted by witnesses for the appellant. The trial judge also noted the conflict, but concluded that the plaintiff's witnesses were more convincing. He considered the content of the testimony, the demeanor of the witnesses, and the reasons *1074 which the witnesses may have had for testifying the way they did.
Appellate courts must give weight to the conclusions reached by a trier of fact, and where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal absent clear error. Bren Lynn Corporation v. Valliere, 434 So.2d 600 (La.App. 3rd Cir.1983). We find no clear error.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to defendant-appellant.
AFFIRMED.
NOTES
[1] Defendant-appellant is actually complaining that his motion for summary judgment, filed on the basis that plaintiff's presumptively legitimate status barred this suit, was improperly denied.
[2] Article 185 provides in pertinent part: "A child born less than three hundred days after the dissolution of the marriage is presumed to have been conceived during the marriage."