493 So.2d 881 (1986)
Randy JOHNSON, Plaintiff-Appellant,
v.
Sam MASUR, David Masur, Hanover Insurance Company and Farm Bureau Insurance Company and/or Louisiana Farm Bureau Casualty Insurance Company, Defendants-Appellees.
No. 85-835.
Court of Appeal of Louisiana, Third Circuit.
September 3, 1986.
*882 Durio, McGoffin, Etc., Gary McGoffin, Lafayette, for plaintiff-appellant.
Onebane & Associates, Frank X. Neuner, Jr., Lafayette, Martin & Taulbee, Edward O. Taulbee, IV and Kenneth Olivier, Davidson, Meaux, John G. Swift, Lafayette, for defendants-appellees.
Before LABORDE and KING, JJ., and PAVY, J. Pro Tem.[*]
KING, Judge.
The main issue presented by this appeal is whether or not the trial court erred in its award of damages based on its finding that the plaintiff failed to prove that his present *883 medical condition was a result of the accident in question.
Randy J. Johnson (hereinafter referred to as plaintiff) filed suit against David H. Masur, Samuel E. Masur, and The Hanover Insurance Company (all hereinafter referred to as defendants), and Louisiana Farm Bureau Casualty Insurance Company[1] (hereinafter referred to as Farm Bureau), seeking recovery for damages that he sustained in an accident involving the collision of his automobile with an automobile being driven by Sam Masur. Plaintiff appeals from a trial court judgment in his favor, complaining of an inadequate award of damages. We affirm.

FACTS
A review of the record reveals the following facts. On August 1, 1982, while plaintiff was driving his automobile Southwesterly on Congress Street in Lafayette, Louisiana near the Congress Street-Bertrand Street intersection, plaintiff was injured when an automobile, being driven by Sam Masur and owned by David Masur, pulled out of a Mobil Station and collided with plaintiff's automobile (hereinafter referred to as the first accident). The automobile being driven by Sam Masur was owned by his father, David Masur, and was insured by The Hanover Insurance Company. Farm Bureau was the liability insurer, medical payments insurer, and underinsured insurer of the Johnson automobile. Plaintiff was taken by ambulance to Our Lady of Lourdes Hospital in Lafayette, Louisiana, where he was examined by the emergency room physician, X-rayed, and released. At the time of the accident, plaintiff was a waiter at LaFonda's Restaurant in Lafayette, Louisiana.
Following the accident, plaintiff testified that he visited his family physician, Dr. John Bernard, three to five times, complaining of back and neck problems. Plaintiff also testified that he engaged in physical therapy for a couple of months. Plaintiff was first examined by Dr. Robert Martinez, a neurologist, on November 16, 1982, on the referral of Dr. Bernard. Having the benefit of plaintiff's X-rays taken immediately after the first accident, Dr. Martinez found some angulation of the C3-C4 level in the cervical region, as well as some narrowing of the C4-C5 interspace. However, Dr. Martinez found that plaintiff had no significant muscle spasms and that plaintiff's neurological examination was normal. Dr. Martinez therefore diagnosed plaintiff as suffering from muscle and ligament injuries causing pain.
Dr. Martinez next examined plaintiff on January 17, 1983, at which time he found plaintiff to be in about the same condition. Plaintiff visited Dr. Martinez again on January 31, 1983, at which time he told Dr. Martinez that he did not want to take any medication. Plaintiff also again visited Dr. Martinez on April 28, 1983, at which time Dr. Martinez diagnosed plaintiff as having a "compression fracture at C4 level of his spine" which he felt was related to the accident.
Following the April 28, 1983 visit, Dr. Martinez admitted plaintiff into Our Lady of Lourdes Hospital in order to have a myelogram performed. Based upon the myelogram, a CAT scan, and his clinical observations, Dr. Martinez's diagnosis was that plaintiff had "cervical and lumbar myofascial pain post-traumatic, cervical disc disease with osteophyte at C3-4, and probable lumbar disc disease at L4-5." Plaintiff returned to Dr. Martinez on May 31, 1983. Because of the findings of the myelogram which revealed a bulging disc at the C4-C5 level, and because of plaintiff's complaints of pain, Dr. Martinez at that time discussed with plaintiff the advisability of a chymopapain injection, which plaintiff elected not to have.
On October 5, 1983, plaintiff was involved in a second automobile accident *884 (hereinafter referred to as the second accident) on Johnston Street in Lafayette in which an automobile being driven by Thomas Muffletto, Jr. collided with plaintiff's automobile. Plaintiff went to the emergency room following the second accident. Plaintiff filed suit against Mr. Muffletto, Mr. Muffletto's father, and their automobile insurer, State Farm Mutual Automobile Insurance Company, alleging that as a result of the second accident he had "suffered severe, disabling and permanent injuries to his body, including but not limited to severe injury to his neck, shoulders, arms and back." On April 30, 1984, a second myelogram was performed on plaintiff. Dr. Martinez testified that the second myelogram indicated an advance in plaintiff's cervical disc disease from the time of the previous myelogram.
After the second accident, plaintiff fell three times while working at Lafonda's Restaurant. The first fall occurred in the kitchen of Lafonda's Restaurant when plaintiff slipped on the wet floor. Plaintiff testified that his lower back hurt as a result of the fall, and he apparently took pain medication to relieve that pain.
A couple of weeks later, plaintiff again fell, this time slipping on some grease that was on the dining room floor. In falling, plaintiff hit a table and eventually landed on his back. Plaintiff testified that the second fall stunned him quite a bit, leaving a few bruises and caused him to stay on the floor for several minutes before getting up with assistance. Plaintiff further testified that this second fall caused him to go home early and to miss an additional day of work. Both of plaintiff's first two falls occurred in May, 1984.
In July, 1984, plaintiff fell a third time at LaFonda's Restaurant when he attempted to stand up after sitting on a bench. Plaintiff testified that he fell because of a tremendous "shooting pain" in his back. Plaintiff stayed on the floor for approximately one half hour until he was taken by ambulance to Our Lady of Lourdes Hospital, where he stayed ten days.
On July 26, 1983, plaintiff filed suit against defendants and Farm Bureau for damages in the amount of $260,000.00 arising out of the first accident. Farm Bureau then filed an answer and a supplemental answer and third party demand against the defendants, requesting judgment for full indemnity should it be found liable to plaintiff. Plaintiff's suit was consolidated for trial with a suit entitled "Louisiana Farm Bureau Casualty Company v. David H. Masur, Samuel Masur and Hanover Insurance Company," in which Farm Bureau was seeking reimbursement from the defendants of a subrogation claim for $3,452.54 paid to plaintiff, representing the sum it had paid to plaintiff under the medical provisions of its policy of insurance on plaintiff's automobile, for medical expenses incurred as a result of the first accident.
After a trial on the merits, the trial court found that the sole and proximate cause of the first accident was the negligence of Sam Masur, that plaintiff suffered a severe muscle and ligament strain as a result of the accident, but that plaintiff failed to prove that his present disabling condition was a result of the first accident. The trial court therefore rendered judgment (1) in favor of plaintiff and against defendants, Sam Masur and The Hanover Insurance Company,[2] in the sum of $20,000.00, (2) in favor of Farm Bureau and against plaintiff, dismissing plaintiff's claim against Farm Bureau, and (3) in favor of Farm Bureau and against defendants, Sam Masur and The Hanover Insurance Company, on its subrogation claim in the amount of $3,452.54. All costs of the proceeding as were taxed against defendants. A formal written judgment was signed. Plaintiff has appealed, and alleges the following specifications of error:
(1) The trial court erred in finding that Dr. Martinez did not review plaintiff's X-rays on his initial examination;

*885 (2) The trial court erred in its finding regarding Dr. Martinez's diagnosis following the June, 1983 myelogram;
(3) The trial court erred in finding that plaintiff had no radiculopathy prior to November 2, 1983;
(4) The trial court erred in not admitting Dr. Goldware's written medical report, a copy of which was sent to Dr. Martinez;
(5) The trial court erred in holding that Dr. Aurich was unable to determine the cause of plaintiff's chronic pain;
(6) The trial court erred in finding that plaintiff's present medical condition was not a result of the August 1, 1982 accident;
(7) The trial court erred in finding that plaintiff was exaggerating his complaints;
(8) The trial court erred in finding that none of the doctors who examined and treated plaintiff prescribed any surgery to correct his condition;
(9) The trial court erred in finding that plaintiff suffered no loss of earning capacity as a result of the accident; and
(10) The trial court erred in its award of damages.
For the purpose of clarity in this opinion, we will address plaintiff's specifications of error in a different order.

CAUSATION
In his sixth specification of error, plaintiff alleges that the trial court erred in finding that his present medical condition was not a result of the August 1, 1982 accident. The burden of proof upon a plaintiff involved in multiple accidents was summarized by this court in Edwards v. Bankers & Shippers Ins. Co., 432 So.2d 1138 (La.App. 3rd Cir.1983), as follows:
"In situations involving multiple accidents, whether preceding or subsequent to the accident at issue, it is well settled that a tortfeasor is liable only for the direct and proximate results of his wrongful act. White v. Cumis Ins. Soc., 415 So.2d 574 (La.App. 3rd Cir.1982). Furthermore, the plaintiff has the burden of proving by a preponderance of the evidence the causal connection between the accident and the injuires claimed. Coleman v. Victor, 326 So.2d 344 (La. 1976). Whether or not this burden has been sustained is a question for the trier of fact and its finding will not be disturbed on appeal unless clearly wrong. Dofflemyer v. Gilley, 384 So.2d 435 (La. 1980)." Edwards v. Bankers & Shippers Ins. Co., 432 So.2d 1138, at page 1140 (La.App. 3rd Cir.1983).
As the trial judge noted in his written Reasons For Judgment, plaintiff not only continued to work following the first accident without missing any shifts, but he additionally worked more hours after the first accident than he was working before the first accident. It was not until after the second accident that plaintiff missed some work due to his medical condition. Also, it was not until after plaintiff's third fall at Lafonda's Restaurant on July 10, 1984 that plaintiff was told by Dr. Martinez to stop working in a job that required physical labor.
We quote, with approval, the trial judge's additional observations in the case, stated in his written Reasons For Judgment, as follows:
"Further, plaintiff saw Dr. Martinez approximately five (5) times in the fourteen (14) month period after the first automobile accident, and saw Dr. Martinez an additional twelve (12) or more times after the second automobile accident.
* * * * * *
The Court notes that Dr. Hirshberg apparently felt that plaintiff was exaggerating his complaints and recommended that a pyschological [sic] examination be performed. Finally, the Court notes that plaintiff's only hospitalization for treatment, rather than for testing and examination, occurred on July 10, 1984, after a severe falling incident."
Additionally, Dr. Martinez testified on cross-examination that plaintiff was improving or at least remaining stable after *886 the first accident, but before the second accident, and that he had no reason to doubt that plaintiff could not have continued working at Lafonda's Restaurant after the first accident as a waiter had it not been for the subsequent second accident and plaintiff's subsequent falls while working at the restaurant.
Finally, we note that Dr. James McDaniel, a Lafayette orthopedic surgeon, who examined plaintiff on November 2, 1983 at the request of defense counsel, testified that plaintiff's X-ray taken on the date of the first accident revealed some old mild degenerative changes which predated the first accident, and that plaintiff did not suffer a compression fracture of the C3-4 vertebrae as a result of the first accident. Dr. McDaniel further testified that in his opinion plaintiff was not suffering from a herniated or ruptured disc, and that plaintiff was not suffering from a disabling or debilitating condition from the first accident at the time of his examination on November 2, 1983.
We conclude that the trial court's finding that plaintiff failed to carry his burden and prove that his present condition was the result of the August 1, 1982 accident is not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La. 1973). Accordingly, plaintiff's sixth specification of error has no merit.

GENERAL DAMAGES
In his tenth specification of error, plaintiff alleges that the trial court erred in its award of general damages. Since the trial court found that plaintiff did sustain a severe muscle and ligamentous strain as a result of the first accident, it awarded plaintiff $20,000.00 in general damages.
Before the appellate court can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Browning v. Commercial Union Ins. Co., 476 So.2d 559 (La.App. 3rd Cir.1985); Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3rd Cir.1980). In view of the fact that we have affirmed the trial court's finding that plaintiff failed to prove that his present disabling condition is a result of the first accident, we conclude that the trial court's award of $20,000.00 in general damages is an adequate award and is not an abuse of discretion. Accordingly, plaintiff's tenth specification of error has no merit.

EARNING CAPACITY
In his ninth specification of error, plaintiff alleges that the trial court erred in finding that he suffered no loss of earning capacity as a result of the first accident. The trial judge indeed stated in his written Reasons For Judgment that plaintiff had not proven that he lost any future wages as a result of the August 1, 1982 accident. We agree with this assessment of the evidence made by the trial judge.
Dr. Bernard Pettingill, Jr., accepted by the court as an expert in economics, testified on behalf of plaintiff as to plaintiff's future loss of earnings. However, Dr. Pettingill's testimony does not take into consideration the trial court's finding, which we affirm, that plaintiff failed to carry his burden and prove that his present disabling condition is the result of the August 1, 1982 accident. As previously mentioned, the trial judge made a specific finding that plaintiff was not disabled from working as a result of the August 1, 1982 accident, had it not been for the second automobile accident and/or the subsequent three slip and falls while at work. This finding is amply supported by the evidence. In fact, Dr. Pettingill acknowledged that plaintiff suffered no loss in wages from the time of the accident to July 10, 1984, the date on which plaintiff quit working at Lafonda's Restaurant on the advice of Dr. Martinez. Therefore, we conclude that plaintiff's ninth specification of error has no merit.

FINDINGS REGARDING MYELOGRAM AND RADICULOPATHY
In his second and third specification of error, plaintiff alleges that the trial court *887 erred (1) in its finding regarding Dr. Martinez's diagnosis following the June, 1983 myelogram, and (2) in finding that he had no radiculopathy prior to November 2, 1983.
Concerning his diagnosis of plaintiff's condition following the June, 1983 myelogram, Dr. Martinez testified as follows:
DR MARTINEZ: "My final diagnosis was that he had cervical and lumbar myofascial pain post-traumatic, cervical disc disease with osteophyte at C3-4, and probable lumbar disc disease at L4-5."
ATTORNEY: "Could you explain in a little more detail what those various diagnoses would entail and what they are?"
DR. MARTINEZ: "Well, he did have the myelogram. He had a cervical and lumbar myelogram, and he had an extraduralhe had a defect that was outside of the spinal canal but still within the spinal compartment. In other words, it was outside of the covering of the spinal cord and the nerves at L4-5, and that usually means pressure from something like a disc. As a matter of fact, they reported it as a ventral bulge or a ventrally herniated disc.
And in the neck area there was this reversal again at the 3-4 level, and there was some bony [sic] protrusion there that caused a mild defect in the dye column at that level. And he had a CT of the lumbar spine. It was lying down with the CT scan, so it was a normal CT scan at 4-5 and L5-S1."
In his written Reasons For Judgment, the trial judge stated: "Dr. Martinez testified that the myelogram indicated a defect outside the spinal cord at the L4-5 level indicating a bulging or herniated disc, and a boney protrusion in his neck at C3-4." It is readily apparent that the trial judge's statement regarding Dr. Martinez's interpretation of the June, 1983 myelogram is accurate and consistent with his testimony. The trial judge only addressed Dr. Martinez's interpretation of the myelogram; he did not make any statement regarding Dr. Martinez's diagnosis of plaintiff's condition following the June, 1983 myelogram. Obviously, the trial judge does not have a duty to recapitulate all of the evidence which was presented at trial. Since the trial court did not make a factual finding regarding Dr. Martinez's diagnosis following the June, 1983 myelogram, there is no factual finding that is erroneous.
Next, plaintiff alleges that the trial court erred in finding that he had no radiculopathy prior to November 2, 1983. Plaintiff correctly points out that Dr. Martinez did testify that he had some elements of radiculopathy, which is an injury to the nerve root of the radicular portion of the nerve, prior to plaintiff's second automobile accident.
In his written Reasons For Judgment, the trial judge discussed Dr. McDaniel's November 2, 1983 examination of plaintiff, and stated the following:
"Dr. McDaniel reviewed x-rays taken on August 1, 1982, after the first accident, which indicated some minor degenerative arthritic narrowing at C3-4 which predated the first accident. He explained that plaintiff had an old flattening of the C-4 level and reversal of the normal cervical curve. He stated that these changes would take a few years to form, and could not happen in one day or one year. Also, plaintiff did not have any radicular or radiating pain to the areas those nerves supply. He further opined that plaintiff could continue to work and that no surgery was indicated." (Emphasis added.)
In stating that "plaintiff did not have any radicular or radiating pain in the areas those nerves supply," the trial court was obviously summarizing the findings of Dr. McDaniel, who did in fact so testify. Since the trial court made no finding that plaintiff had no radiculopathy prior to November 2, 1983, there is no factual finding that is erroneous. Therefore, plaintiff's second and third specifications of error have no merit.

*888 CAUSE OF PAIN AND EXAGGERATION OF COMPLAINTS
In his fifth and seventh specifications of error, plaintiff alleges that the trial court erred (1) in holding that Dr. Aurich was unable to determine the cause of plaintiff's chronic pain, and (2) in finding that plaintiff was exaggerating his complaints.
In his written Reasons For Judgment, the trial judge stated the following:
"On August 20, 1984, he was examined by Dr. Lynn Aurich, a clinical psychologist, who testified that in his opinion plaintiff has `chronic pain' but he was unable to determine its cause."
The trial judge's statement regarding Dr. Aurich's testimony is accurate as evidenced by the following excerpt taken from the record:
ATTORNEY: "Now you indicated that, as I understood your direct testimony in response to Mr. McGoffin [plaintiff's attorney], that Mr. Johnson [plaintiff] is suffering from chronic pain syndrome; is that right?"
DR. AURICH: "That's right."
ATTORNEY: "And that's the sum and substance of the bottom-line opinion, as I understand it?"
DR. AURICH: "That's correct."
ATTORNEY: "And you're not trying to tell us today what causes what you define as chronic pain, but just as you saw the man in August of 1984, that was the condition that you think he's in. Is that right?"
DR. AURICH: "That's correct."
ATTORNEY: "In other words, you're not trying to correlate between the first (1st) automobile accident and the second (2nd) automobile accident or any of his slip and falls at work?"
DR. AURICH: "No."
ATTORNEY: "That wasn't your purpose, and you're not trying to do that today, right?"
DR. AURICH: "No."
Therefore, we find that the trial court did not err in holding that Dr. Aurich was unable to determine the cause of plaintiff's chronic pain.
In his written Reasons For Judgment, the trial judge also stated the following:
"The Court notes that Dr. Hirshberg apparently felt that plaintiff was exaggerating his complaints and recommended that a psychological examination be performed." (Emphasis added.)
The trial judge did not even make a finding that plaintiff was exaggerating his complaints, much less an erroneous finding; he merely noted what he considered Dr. Hirshberg's opinion to be. Moreover, Dr. Hirshberg stated in his written medical report, dated July 30, 1984, that he could find no evidence of cervical or lumbar radiculopathy to account for plaintiff's incapacitating pain complaints, and he suggested that part of the evaluation of plaintiff should include either an MMPI or other valid (psychological) examination. We find that the trial judge's statement regarding Dr. Hirshberg's opinion of plaintiff's condition is not erroneous. Accordingly, plaintiff's fifth and seventh specifications of error have no merit.

EXCLUSION OF EVIDENCE
In his fourth specification of error, plaintiff alleges that the trial court erred in not admitting Dr. Goldware's written medical report received by Dr. Martinez. Dr. Steven Goldware, a neurosurgeon practicing in Lafayette, Louisiana, examined plaintiff and issued a written medical report, at the request of defendants. On direct examination of Dr. Martinez during the trial, plaintiff's attorney sought to introduce the report issued by Dr. Goldware, a copy of which was also sent to Dr. Martinez, on the basis that Dr. Martinez used Dr. Goldware's report in forming his opinion as to plaintiff's condition. Upon timely objection by defense counsel, the trial judge allowed Dr. Martinez to testify that he did use the report in forming his opinion; but, plaintiff's attorney was not allowed to introduce the written medical report into evidence. *889 This medical report was included in the record as a proffer of evidence.
In support of his contention that the trial judge erred in not admitting the report into evidence, plaintiff has cited the case of Giroir v. Pann's of Houma, Inc., 341 So.2d 1346 (La.App. 1st Cir.1976). In that case, which involved the issue of causation as to the decedent's death, the trial court ruled inadmissible a physician's opinion offered as proof of the cause of the decedent's death. The trial court's ruling was based on the ground that the physician, who did review the written autopsy report of the decedent, was not present at the time of decedent's death nor did he examine the decedent postmortem. However, the First Circuit Court of Appeal, in holding that the physician's opinion-testimony as to the decedent's cause of death was admissible, stated that the physician, an expert in orthopedic surgery, could base his opinion on the autopsy report without having himself performed it.
Plaintiff's reliance upon the Giroir case, which only stands for the proposition that an expert's opinion-testimony need not be based on personal examination of the person or thing at issue, as authority for admission of a written medical report used by the expert, is misplaced. See also Bailey v. Douglas, 478 So.2d 172 (La.App. 3rd Cir. 1985), writ den., 479 So.2d 365 (La.1985). The Giroir case does not stand for the proposition that hearsay evidence may be rendered admissible merely because an expert witness has based his opinion in whole or in part on this otherwise inadmissible evidence.
The value of an expert witness' opinion depends on the existence of facts on which it is predicated, and for the opinion to be valid and to merit weight, the facts on which it is based must be substantiated by the record. Audubon Ins. Co. v. State Farm Mut. Ins. Co., 425 So.2d 907 (La.App. 4th Cir.1983). In the case at hand, the trial court allowed Dr. Martinez to testify as to his opinion of plaintiff's condition, and also as to his reliance on Dr. Goldware's report. We find no error in the trial court's failure to allow the written medical report itself into evidence. We have nevertheless reviewed the report, and find that even if the trial court's disallowance of the report into evidence was an error, it was a harmless error. Although Dr. Goldware stated in his medical report that it was his opinion that the second accident of October, 1983 had no effect on plaintiff's previous injury, his medical report does not mention plaintiff's subsequent slip and fall accidents, and does not require a reversal of the trial court's finding that plaintiff has failed to prove that his present condition is the result of the August 1, 1982 accident.
Plaintiff further contends that the trial judge erred in not admitting Dr. Goldware's medical report into evidence because he subsequently allowed Dr. Martinez to be cross-examined in regard to the written medical report of Dr. Hirshberg, a neurosurgeon in Houston, Texas who examined plaintiff at the referral of Dr. Martinez. However, the parties apparently stipulated to the admissibility of Dr. Hirshberg's written medical report prior to trial. Therefore, the trial judge did not err in treating differently the admissibility of the reports of Dr. Goldware and Dr. Hirshberg. Accordingly, we find that plaintiff's fourth specification of error has no merit.

HARMLESS ERROR
In his first and eighth specifications of error, plaintiff alleges that the trial court erred (1) in finding that Dr. Martinez did not review plaintiff's X-rays on initial examination, and (2) in finding that none of the doctors who examined and treated him prescribed any surgery to correct his condition.
In regard to Dr. Martinez's first examination of plaintiff, the trial judge stated in his written Reasons For Judgment that:
"Dr. Martinez found no cervical muscle spasm, full range of motion, and a normal neurological exam in both cervical and lumbar areas. He felt that plaintiff *890 had sustained a muscle and ligamentous strain in his neck and back. His findings were made without benefit of reviewing x-rays taken of plaintiff on August 1, 1982, shortly after the accident."
However, Dr. Martinez testified that he did have the benefit of plaintiff's X-rays which were taken at the hospital following the accident. Nevertheless, plaintiff has not suggested, nor does this Court see, how this misstatement made by the trial judge adversely affected plaintiff's rights or undermines the reasons supporting the trial court's judgment. Moreover, Dr. Martinez's initial finding that plaintiff was suffering from only muscle and ligament pain as of his November 16, 1982 examination of plaintiff is strengthened by the fact that he did have the benefit of plaintiff's X-rays which were taken immediately following the accident. When error is detected, it must be weighed to determine whether such error is harmless or prejudicial. Cormier v. Cormier, 479 So.2d 1069 (La.App. 3rd Cir.1985); Naquin v. Maryland Casualty Company, 311 So.2d 48 (La.App. 3rd Cir.1975), writ not considered, 313 So.2d 598 (La.1975). We find that the trial judge's misstatements regarding Dr. Martinez's review of plaintiff's X-rays is harmless error, and this specification of error therefore has no merit.
Finally, plaintiff correctly points out that the trial judge stated in his written Reasons for Judgment that "none of the doctors who examined and treated plaintiff have prescribed any surgery to correct his condition." Dr. Martinez did in fact discuss with plaintiff the consideration of a chymopapain injection, which is an injection of an enzyme into the disc. Also, Dr. Martinez testified that a chymopapain injection is considered surgery.
The trial judge was well aware of Dr. Martinez's discussion of the injection with plaintiff, as evidenced by his written Reasons For Judgment in which he stated that "... Dr. Martinez suggested that he [plaintiff] submit to a chymopapain injection at the L4-5 disc, however, plaintiff decided not to undergo this injection." No other surgery was prescribed by any of the physicians who examined plaintiff. We therefore find that the trial judge's statement that "[n]one of the doctors who examined and treated plaintiff have prescribed any surgery to correct his condition" is harmless error. Cormier v. Cormier, supra; Naquin v. Naquin, supra. Accordingly, plaintiff's first and eighth specifications of error have no merit.
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.
NOTES
[*] Judge H. Garland Pavy of the Twenty-Seventh Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] In his petition, plaintiff erroneously referred to Louisiana Farm Bureau Casualty Company as "Farm Bureau Insurance Companies." Louisiana Farm Bureau Casualty Company appeared and filed an answer and third party demand and an amended and supplemental answer and third party demand in which it corrected this error concerning its proper name.
[2] After the close of plaintiff's case-in-chief, the trial court granted a motion for a directed verdict in favor of David Masur, the owner of the car, which was unopposed by plaintiff or Farm Bureau.