583 So.2d 79 (1991)
James PATTERSON
v.
Anna E. MEYERS, et al.
Consolidated With Elmira DOOLEY, et al.
v.
NEW ORLEANS PUBLIC SERVICE INC., et al.
Consolidated With Dorothy L. CRYER
v.
NEW ORLEANS PUBLIC SERVICE INC., et al.
Consolidated With NEW ORLEANS PUBLIC SERVICE INC.
v.
Carl BOLDEN, et al.
Consolidated With Anna MEYERS
v.
Carl BOLDEN, et al.
Consolidated With Xuan Minh DOAN
v.
MATLACK, INC.
Nos. 90-CA-0942 through 90-CA-0947.
Court of Appeal of Louisiana, Fourth Circuit.
June 24, 1991.
*80 Charles G. Merritt, New Orleans, for plaintiffs/appellants, Dorothy L. Cryer and Elmira Dooley Boone.
Charlton B. Ogden, III, Ogden, Ogden & Wright, New Orleans, for defendant/appellee, New Orleans Public Service Inc.
Stephen J. Simone, Katz and Simone, Metairie, for plaintiff/appellee, Anna E. Meyers.
William J. Guste, Atty. Gen., Randall J. Cashio, Special Asst. Atty. Gen., Baton Rouge, for defendants/appellees, State of Louisiana, through the Dept. of Transp. and Development.
Pamela R. Gibbs, Asst. City Atty., Beverly Zervigon, Acting Chief Deputy City Atty., William D. Aaron, Acting City Atty., Bruce G. Whittaker, Asst. City Atty., New Orleans, for defendant/appellee, City of New Orleans.
George J. Nalley, Jr., New Orleans, for defendants/appellants, Carl Bolden, Matlack, Inc. and Continental Ins. Co.
Before BARRY, CIACCIO and ARMSTRONG, JJ.
BARRY, Judge.
These consolidated cases result from an April 29, 1982 traffic accident involving a New Orleans Public Service Inc. bus and an 18-wheel tank truck owned by Matlack, Inc.
Bus passengers James Patterson, Elmira Dooley Boone,[*] Dorothy Cryer and Xuan Minh Doan sued NOPSI and its driver Anna Meyers, Matlack and its driver Carl Bolden, and Continental Insurance Company, Matlack's insurer. Meyers and NOPSI answered and filed a third party demand against the City of New Orleans and the State Dept. of Transportation. Meyers filed a separate suit against Bolden, Matlack and Continental. Matlack answered and filed a counter-claim against NOPSI and a third party demand against the City. The State answered and filed a third party demand against NOPSI. The suits were consolidated.
The question of liability was tried by consent before a Commissioner of Civil District Court. After five days of hearings the Commissioner found that the sole and proximate cause of the accident was the negligence of Carl Bolden, driver of the truck. The trial court adopted the Commissioner's recommendations and entered judgment in favor of Meyers, NOPSI, the City and State assessing liability against Bolden, Matlack and Continental. The judgment was rendered prior to preparation of the transcript.
*81 Bolden, Matlack and Continental appealed. This Court vacated the judgment and remanded for a review of the transcript as required by La.R.S. 13:1176(G) and Quarles Drilling Corp. v. General Accident Insurance Co., 520 So.2d 475 (La. App. 4th Cir.1988).
On December 14, 1989 the trial court signed a judgment which restated the prior judgment. Defendants appeal, alleging numerous assignments of error.

FACTS
The accident occurred at the intersection of Old Gentilly Road and Chef Menteur Highway. The weather was clear, sunny and dry.[1] There was no problem with visibility or the road conditions.
Old Gentilly ends at Chef Menteur which causes all traffic on Old Gentilly to turn left or right at the intersection. The intersection is controlled by traffic signals owned by the State of Louisiana and maintained by the City of New Orleans. The speed limit on Chef Menteur is 55 m.p.h.
Bus passenger Elmira Boone testified that the bus had a green light when it entered the intersection. Two other passengers testified that they could not see the traffic light but that the bus and bus driver did nothing unusual prior to impact. Passenger James Patterson did not testify.
The bus driver, Anna Meyers, testified that she stopped for a red light at Chef Menteur, then when the light turned green she proceeded across Chef Menteur. She noticed the Matlack truck approximately three blocks away on Chef Menteur and assumed it would stop at the intersection. Ms. Meyers said the bus accelerated very slowly. She said that the truck, instead of slowing down, appeared to go faster and its brakes were squealing. She looked back at the traffic light facing Chef Menteur and it was red. The truck hit the bus broadside. She did not remember seeing a yellow caution light, but may not have noticed it because she was very frightened and excited. Four passengers were on the bus.
Ms. Meyers testified that in August or September of 1984 she unexpectedly saw Bolden at Charity Hospital and he invited her to a Burger King. Ms. Meyers said that Bolden apologized because he had the red light but could not stop the truck. He said that he did not remember whether he applied his brakes. Ms. Meyers said he told her that he lied to Matlack because he was afraid of losing his job.
Bolden testified that the traffic light was green as he approached the intersection at approximately 43 m.p.h. He was 250 to 300 feet from the intersection when he first saw the bus on Old Gentilly about 30 to 40 feet from the intersection. He realized that the bus was not going to stop and he applied the brakes. Bolden said that the traffic light on Chef Menteur was green when the bus entered the intersection at Old Gentilly and it remained green for 30 to 45 seconds after the accident.
Bolden admitted meeting Ms. Meyers at Charity Hospital and discussing the accident with her at Burger King. He denied telling her that he had a red light or that he was afraid of losing his job.
Isiah Hill, a truck driver for Neeb-Kearney Company, testified for the defense. Hill stated that he was stopped in front of the bus at the traffic light on Old Gentilly and turned left onto Chef Menteur when the light changed. He saw the Matlack truck approximately one-half mile away on Chef Menteur. He claimed the traffic signal was malfunctioning causing the lights to change at random. He said the light turned red while his truck was crossing the intersection and the bus followed him into the intersection on a red light. After Hill completed his turn, he noticed the truck start to skid and realized it was going to hit the bus. Although driving an 18-wheel truck, he said that he turned around to look for several seconds and saw the accident. He stated that the truck had a green light.
Hill did not stop when he saw the accident, but returned about an hour later and spoke to an insurance adjuster. Police officers were at the scene but Hill did not inform them that he saw the accident.
*82 Neither Ms. Meyers nor Ms. Boone remembered seeing Hill's truck. Ms. Meyers testified that no vehicle was in front of the bus when she was stopped at the traffic light.
Kevin Nesbitt, an adjuster for Matlack's insurer, testified that when he arrived at the accident scene Bolden told him that a witness spoke to him briefly and promised to return after he made a delivery. Hill arrived approximately one-half hour later and gave Nesbitt his name, address, and said he saw the accident.
Officer Paul Mattio testified that he was assigned to investigate the accident and he did not issue a citation to Bolden or Ms. Meyers. Due to Bolden's claim about the malfunctioning traffic light, Officer Mattio stood on a corner and observed that the traffic lights facing both directions worked properly.
It was stipulated that Sgt. Gostol and Sgt. Anderson would have confirmed Officer Mattio's testimony.
Michael Fretwell, traffic signal technician for NOPSI, testified that the traffic light could not malfunction for a brief period and then work properly on its own.
Matlack tendered two expert witnesses, Dr. Frank Griffith, a physicist, and Ray Burkhart, an expert in accident reconstruction. Based on Dr. Griffith's calculations, Burkhart suggested a number of scenarios. His opinion was that the truck's speed was 40 to 45 m.p.h. prior to braking and that at impact it was 15 to 20 m.p.h. He admitted that his opinion was based on a number of assumptions and he did not know the correct underlying data.
Albert Decker testified for NOPSI as an expert in accident reconstruction. Based on numerous assumptions including the braking characteristics of the truck, the point at which the driver applied the brakes, the sideways displacement of the bus at impact and the friction factor of the road surface, Decker estimated that the truck was traveling 64.5 m.p.h. when it began to skid and that the impact speed was in the "low twenties."
The Commissioner determined that the accident happened because Bolden disregarded a red light while travelling at an excessive speed. He stated that the testimony of Ms. Meyers was consistent and credible while that of Bolden "[left] a lot to be desired as far as credibility is concerned." The Commissioner found the testimony of Isiah Hill "so unworthy of belief it leads to the conclusion, after considering all of the evidence in the light of his testimony, that Isiah Hill was neither an eyewitness to this accident, nor was he anywhere near the scene when this accident took place."
The trial court accepted the findings of the Commissioner as to law and fact.

ASSIGNMENT NO. 1
Defendants argue that plaintiffs failed to prove a prima facie case of negligence and that a reversal on liability is required as a matter of law.
A motorist approaching an intersection is charged with the duty to watch vigilantly for pedestrians and vehicles caught between light changes and cannot depend exclusively on a favorable light. Davis v. Marshall, 467 So.2d 1211 (La.App. 2d Cir.1985), writ denied 472 So.2d 917 (La.1985); Bouldin v. Williams, 472 So.2d 244 (La.App. 1st Cir.1985). A favored vehicle is required to yield the right-of-way to other vehicles and pedestrians lawfully within the intersection when the light changes. La.R.S. 32:232(1)(a).
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial judge expressly discounted the credibility of Mr. Bolden and, in effect, called Mr. Hill a liar. We do not find manifest error in that determination.
We are satisfied that the record supports the conclusion that the traffic light did not malfunction and Bolden was at fault. Ms. Meyers and Ms. Boone testified *83 that the light was green when the bus entered the intersection. Officer Mattio testified that the traffic light functioned properly shortly after the accident. Fretwell testified that the light could not malfunction then correct itself.
This assignment is without merit.

ASSIGNMENT NO. 2
Defendants argue that if the traffic signal functioned properly, the Commissioner's findings of fact are physically impossible. We disagree.
The Commissioner found that the traffic signal functioned normally; that the bus stopped for a red light at Chef Menteur and entered the intersection after the light turned green; and that Bolden ran a red light because he was driving too fast to stop.
An appellate court should not disturb the factual conclusions of a trial court, particularly those involving the credibility of witnesses, unless those conclusions are shown to be clearly wrong. Rosell, supra.
The attempts to reconstruct the accident are unconvincing. Based on the physical evidence and testimony it is impossible to determine the exact timing of the traffic signal, the speeds of the truck and bus, the drivers' reaction times, or the distance from the intersection where the truck driver applied the brakes.
Based on the record we find the Commissioner's findings are reasonable and not clearly wrong.
This assignment is without merit.

ASSIGNMENT NO. 3
Defendants submit that the trial court erred by excluding testimony as to the speed shown on the truck's tacograph chart.
Bolden testified that the truck's speed was 43 m.p.h. when he began braking. He stated that he noted the speed prior to applying the brakes and his reading was confirmed by a tacograph chart removed from the truck after the accident by Pete Christiansen, Matlack's terminal manager.
A tacograph records a vehicle's speed and any stop. Matlack's policy required that after an accident the terminal manager would remove the tacograph chart from the vehicle and retain it as evidence pending a determination of liability.
Christiansen and Union Steward John Morgan arrived shortly after the accident. Morgan (Bolden's union representative) accompanied Christiansen because under Matlack's policy, Bolden could have been fired if speeding caused the accident.
Christiansen removed the chart and made two copies. One copy was sent to Matlack's home office in Pennsylvania, one to its regional office in Baton Rouge, and the original was retained in Matlack's local office.
At trial Matlack claimed that the three charts were lost. It suggested that the original might have been stolen in a burglary of the local office. No explanation was given why the Pennsylvania or Baton Rouge copies were not available.
Christiansen and Morgan testified that Matlack took no disciplinary action against Bolden. The court refused to allow them to testify as to the speed recorded on the tacograph chart.
La.C.E. Art. 1004 provides in pertinent part:
The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; (2) Original not obtainable. No original can be obtained by any available judicial process or procedure....
The court correctly refused to admit testimony as to the chart. The chart is the best evidence of the truck's speed. See, e.g., Baham v. Patterson, 353 So.2d 366 (La.App. 1st Cir.1977), writ denied 354 So.2d 1049 (La.1978), in which the court presumed negligence due to defendant's failure to produce a tacograph chart as proof he was driving under the speed limit.
This assignment is without merit.

*84 ASSIGNMENT NO. 4
Defendants argue that the Commissioner erred by making findings of fact which refuted the testimony of Dr. Griffith and Burkhart.
The court was of the opinion that Dr. Griffith and Burkhart lacked adequate data to estimate the truck's speed.
Burkhart's reconstruction of the accident was based on calculations performed by Dr. Griffith. Dr. Griffith testified after Burkhart and in the course of his testimony realized that a number of his calculations of distance and time were mathematically incorrect. Burkhart was not recalled to testify whether the correct calculations would change his opinion.
Burkhart had stated that his reconstruction of the accident was a hypothesis based on assumptions as to acceleration of the bus and the method used to brake the truck. He admitted that if these assumptions were incorrect, his opinion would be incorrect.
The weight to be given to an expert's testimony is largely dependent on his qualifications and the facts on which his opinion is based. Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173 (La.1973); Harmon v. Levenson, 534 So.2d 486 (La. App. 5th Cir.1988). An expert's opinion has no value if the facts on which it is predicated are not substantiated by the record. Johnson v. Masur, 493 So.2d 881 (La.App. 3rd Cir.1986); Audubon Ins. Co. v. State Farm Mutual Ins. Co., 425 So.2d 907 (La.App. 4th Cir.1983).
We note an error in the Commissioner's findings of fact. The Commissioner determined that the impact speed was 43 m.p.h. Bolden testified that the truck was going 43 m.p.h. when he applied the brakes and that he did not know the impact speed. At one point in rather lengthy testimony Bolden indicated that the impact speed was 43 m.p.h.; however, a review of the entire transcript convinces us that a correct interpretation of Bolden's testimony is that the truck's speed was 43 m.p.h. when he applied the brakes.
The erroneous statement of impact speed is not a basis to reverse. The trier of fact found that Bolden ran a red light. Liability was not predicated on a finding that Bolden exceeded the speed limit. The misstatement by the Commissioner was harmless error. See, Philip Werlein, Ltd. v. Daniels, 538 So.2d 722 (La.App. 4th Cir. 1989), writ denied 543 So.2d 21 (La.1989); Johnson, supra.
This assignment is without error.

ASSIGNMENT NO. 5
Defendants argue that Continental Insurance Company was improperly named in the judgment because no evidence was introduced to prove Continental's liability. We agree.
Although Continental was made a defendant, its policy was not introduced into evidence. Accordingly, the judgment against Continental must be reversed.

ASSIGNMENT NO. 6
Defendants submit that the trial court "rubber stamped" the Commissioner's report.
Our detailed review of the entire record supports the Commissioner's report which was adopted by the trial court.
We amend the judgment to exonerate Continental Insurance Company from liability. As amended, the judgment is affirmed.
AMENDED; AFFIRMED.
NOTES
[*] The original suit was captioned Mrs. Elmira Dooley, widow of Robert Lee Boone.
[1] Extraordinary weather for New Orleans.