485 So.2d 50 (1986)
Geraldine R. SCOTT
v.
INSURANCE COMPANY OF NORTH AMERICA.
No. 85-C-2160.
Supreme Court of Louisiana.
March 31, 1986.
Joseph H. Simpson, Simpson & Schwartz, Amite, for plaintiff-applicant.
George J. Richaud, Young & Richaud, New Orleans, for defendant-respondent.
BLANCHE, Justice.
Wiley Scott, a truck driver, died of a heart attack at a Hammond, Louisiana truck stop while driving a tractor trailer en route to Savannah, Georgia from Baton Rouge for the purpose of delivering cargo for his employer. The single issue presented by this worker's compensation case is whether Geraldine Scott, wife of the deceased, is entitled to penalties and attorney's fees under R.S. 22:658 due to the insurer's failure to promptly pay death benefits *51 under the Worker's Compensation Law.
Wiley Scott had been a truck driver by occupation for most of his adult life. After leaving the employ of Modern Maid, Wiley went to work for Groendyke Transport, Inc. in April, 1981. Groendyke is involved in the transportation of liquid cargo, most of which is hazardous in nature. On the morning of July 11, 1983, Wiley Scott reported to work at approximately 7:00 a.m. Wiley was dispatched to the Dow Chemical Plant in Plaquemine, Louisiana for the purpose of picking up cargo that was to be delivered by him to Savannah, Georgia. Wiley was not physically involved in the loading of the liquid cargo into the tank truck. Sometime between 11:00 a.m. and 12:00 noon Wiley returned to the Groendyke yard in Baton Rouge because of a mechanical problem with his tractor-trailer unit. As the unit was being repaired, Scott did not engage in any physical activity. After repairs on the unit were completed, Wiley left the Baton Rouge yard headed to Savannah, Georgia. This was sometime between 4:00 p.m. and 5:00 p.m. On his way out of town Wiley stopped at a truck stop near Hammond apparently intending to place a telephone call to his wife requesting that she deliver several personal items that he would need during the trip. Unfortunately, Wiley suffered a heart attack before he could open the door of his truck. Wiley was discovered dead in his truck some thirty (30) to sixty (60) hours later.
This suit was instituted after the Insurance Company of North America rejected Geraldine Scott's claim for death benefits under the Louisiana Worker's Compensation Law. After the petition was filed several depositions were taken. The first person deposed was Dr. Carlos D. Moreno. Dr. Moreno treated Wiley in July of 1979 for peptic ulcer disease. During the course of treatment Dr. Moreno suspected that Wiley was suffering from some type of heart disease. As a result, arrangements were made for Wiley to be examined by Dr. John Phillips, Chief of Cardiology at Tulane University. After conducting an extensive examination, Dr. Phillips reached the conclusion that Wiley did not suffer from any type of heart disease. Despite the fact that Dr. Moreno never treated or examined Wiley again, he stated that he was certain that Wiley suffered from heart disease since July of 1979. Dr. Moreno also expressed the opinion that in July of 1979 Wiley's job as a truck driver for Modern Maid aggravated his condition. He testified that:
Q. I believe you wrote a letter dated November 19, 1983, "To whom it may concern"which is very short, so I will read it"Mr. Wiley Scott was diagnosed with coronary heart disease on July 16, 1979. His job aggravated his condition."
Could you tell me what you meant, Doctor, by "His job aggravated his condition."
A. Yes, sir. Mr. Scott talked to me about his job at some length. And he related to me that he was under a lot of stress and there were certain circumstances that made his abdominal pain recur and radiate to the upper chest area. And I felt that he did have coronary heart disease and that his job did aggravate his condition because of the nature of his job. He was a truck driver. He was under a lot of stress. And he was having a difficult time. That's why he sought medical advice." (Deposition p. 29).
Dr. Mareno went on to testify that in his opinion the occupation of driving a tractor-trailer unit is inherently stressful. It should be noted however that Dr. Moreno refused to express an opinion as to whether the stress of driving a truck for Groendyke contributed to the death of Wiley Scott since he neither examined the body nor had contact with the deceased since 1979.
Carter Bankston and John David Brashier were also deposed before the trial of this case. Both individuals are co-employees of the deceased. Bankston's deposition basically set forth a summary of Scott's activities on the day of his death. Brashier's deposition primarily deals with the administrative *52 practices of keeping logs and hiring employees. Both persons testified that Scott never complained that his job was stressful or that he suffered physical problems as a consequence of it. They also testified that on the date of his death Wiley did not show any signs of stress.
After evaluating the information available to it, including the death certificate which listed the cause of death as acute cardiopulmonary arrest, severe arteriosclerotic vascular disease, and myocardial infarction, the insurer decided to reject the claim for death benefits.
At the trial of this case Jeni Scott Rayborn, Freddy Blackwell, and Geraldine Scott testified on behalf of the plaintiff. Their testimony basically confirmed the fact that Wiley Scott was under a lot of stress caused by the fact that he was hauling cargo which he perceived as posing a danger to himself, his family, and other drivers. In addition the plaintiff introduced the deposition of Dr. Carlos D. Mareno into evidence. The defendant's case consisted solely of the depositions of Carter Bankston and John David Brashier.
After taking the case under advisement, the trial court rendered judgment in favor of the plaintiff concluding that she had met her burden of proving by a preponderance of the evidence that the stress of driving a truck for Groendyke had contributed to the heart attack suffered by Wiley. Additionally, penalties and attorney's fees were awarded against the insurer in favor of the plaintiff. The First Circuit Court of Appeal, in an unpublished opinion, affirmed the award of death benefits; however, it reversed the award of penalties and attorney's fees after concluding that the insurer did not act arbitrarily or capriciously in failing to pay the compensation benefits since a serious issue existed before trial as to whether the employment contributed to the heart attack. We granted writs solely for the purpose of determining whether Geraldine Scott is entitled to recover penalties and attorney's fees.
La.R.S. 22:658 provides for the assessment of penalties and attorney's fees against an insurer for failure to pay policy benefits within sixty (60) days after receipt of proof of loss and demand for payment, when such failure is found to be arbitrary, capricious, or without probable cause. Since this statutory provision is penal in nature, it is to be strictly construed and the stipulated sanctions should be imposed only in those instances in which the facts negate probable cause for nonpayment. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Moore v. Millers Mutual Fire Insurance Company of Texas, 406 So.2d 708 (La.App.2nd Cir. 1981).
Whether or not a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the insurer at the time of its action. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Scott v. Sears, Roebuck & Co., 406 So.2d 701 (La.App.2d Cir.1981); Edwards v. The Hartford Insurance Company, 445 So.2d 499 (La.App.2d Cir.1984); Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App.2d Cir.1984). Since this is primarily a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error. Scott v. Sears, Roebuck & Co., supra; Edwards v. The Hartford Insurance Company, supra; Harrison v. Chicago Mill & Lumber Co., supra.
It is the finding of this court that the trial judge had sufficient evidence before him to conclude that the Insurance Company of North America acted arbitrarily and capriciously in denying Geraldine Scott's claim for death benefits. It is a well known fact that stress contributes to heart disease. One of the most common causes of stress is the pressure created by one's job environment. Dr. Carlos Moreno stated in his deposition that the occupation of driving a tractor trailer is inherently stressful. Specifically, he stated that Wiley Scott was experiencing physical problems in July of 1979 as a result of the pressure that he was under as a truck driver for Modern Maid. Although Wiley *53 Scott had been employed by Groendyke since April of 1981, the insurer had no reason to believe that driving a truck for Goendyke was less stressful than driving a truck for Modern Maid. In fact, the contrary would appear to be true since the cargo being hauled for Groendyke consisted primarily of hazardous chemicals while the cargo being hauled for Modern Maid consisted solely of baking material.
Since the insurer knew before trial that Wiley Scott died of a heart attack, that he had previous problems with work related stress, and that driving a tractor trailer generated a greater degree of stress than that generated in everyday non-employment life, it was not manifestly erroneous for the trial judge to conclude that the insurer acted arbitrarily and capriciously in refusing to pay death benefits.

DECREE
For these reasons, the judgment of the trial court awarding penalties and attorney's fees is reinstated. JUDGMENT REINSTATED.
MARCUS, J., dissents.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
When an employee suffers a fatal heart attack on the job and his employment duties generally entail exertion or stress greater than that of normal non-employment life, the employee is entitled to compensation. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626, 628 (La. 1982). Driving an eighteen-wheel tractor-trailer unit in transporting hazardous cargo entails exertion and stress greater than that experienced in a non-work situation. An employer's insurer's refusal to pay compensation under these circumstances is arbitrary unless the insurer shows other circumstances justifying the refusal.