521 So.2d 1258 (1988)
Billy G. ADAMSON & Jo Ann Adamson, Plaintiffs-Appellants,
State Farm Mutual Automobile Insurance Company, Intervenor-Appellee,
v.
CITY OF LAFAYETTE, Defendant-Appellee.
No. 87-94.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
Rehearing Denied April 11, 1988.
Writ Denied June 2, 1988.
*1260 Shelton & Legendre, Karl W. Bengston, Lafayette, for plaintiffs-appellants.
Voorhies & Labbe, Gregory K. Moroux, Lafayette, for defendant-appellee.
David M. Kaufman, Lafayette, for intervenor-appellee.
Before GUIDRY, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns injuries sustained as a result of negligence or under the theory of strict liability. Billy G. Adamson and his wife, Jo Ann, appeal the dismissal of their claims against the City of Lafayette for damages they received when their automobile struck a mound of dirt at the end of a dead-end street. After a bench trial, the court ruled that the City of Lafayette was not negligent and, although the failure to erect signs showing the street was a dead-end created an unreasonable risk of harm, the City of Lafayette was not liable because the negligence of Mr. Adamson was the only cause-in-fact of the accident.
The Adamsons contend that the trial court erred: 1) in its determination that the defective condition of the roadway was not a legal cause of the accident; 2) in finding that the City of Lafayette was not negligent regarding the condition of the roadway at the time of the accident; and 3) in finding Mr. Adamson negligent. The issue presented is whether Mr. Adamson was guilty of 100% victim fault. We affirm in part, reverse in part and render.

FACTS
In the late evening hours of June 4, 1983, Mr. and Mrs. Adamson were returning home after an evening out at a Lafayette restaurant. Mr. Adamson was driving their vehicle and Mrs. Adamson was occupying the passenger seat. En route home Mr. Adamson, thinking he was turning on Maryview Farm Road, mistakenly turned onto Dahlia Street. Mr. Adamson testified that shortly after he turned onto Dahlia Street a vehicle traveling in the opposite direction blinded his vision when the driver failed to dim its lights. Accordingly, he momentarily diverted his vision to the edge of the road to avoid the blinding lights. Upon reverting his vision to the roadway, he saw that he was at the end of Dahlia Street, and that there was a large pile of dirt blocking travel. He instantly applied his brakes but was unable to stop. He collided headon into the dirt pile. As a result of the collision, both he and Mrs. Adamson sustained injuries. Mr. Adamson left the scene of the accident without calling the police, returned to his home, and obtained help from his neighbor, William Roland, a former policeman, to bring them to the hospital. Mrs. Adamson was treated at the hospital for a cut in her mouth, cracked front teeth, and a contusion to her shoulder, and released. Mr. Adamson was hospitalized overnight for injuries to the head, neck, chest and arms, and released the next day. Mr. Adamson admitted that he had been drinking but denied that he was intoxicated.
Mr. and Mrs. Adamson filed suit against the City of Lafayette for damages for its negligence or a breach of its duty under strict liability which caused a defective condition on Dahlia Street by failing to post signs showing the street was a dead-end street, and allowing the presence of the pile *1261 of dirt at the end of the road. State Farm Mutual Automobile Insurance Company, the Adamsons' insurer, intervened, seeking recovery from the City of Lafayette of the amounts it paid the Adamsons under its collision coverage. The City of Lafayette filed a third-party demand against Mr. Adamson and State Farm seeking contribution to the extent Mr. Adamson was at fault in causing the accident.
The trial court found Mrs. Adamson free from fault but it did not award her damages because she did not sue her husband or his insurer. Only Mr. & Mrs. Adamson bring this appeal.

DETERMINATION OF FAULT
The trial court found that although Dahlia Street was unreasonably dangerous because no signs were erected to show that it was a dead-end street, Mr. Adamson's negligence was the sole cause of the accident because even if the street had been properly signed, Mr. Adamson would not have seen the signs. We disagree.
Contributory negligence, as a complete bar to recovery, was eliminated by LSA-C. C. Art. 2323; Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La.1985). This circuit has consistently held that where the fault of a motorist and the fault of a governing body responsible for warning motorists against unusually dangerous road hazards combine to produce an accident, comparative negligence is applicable. Ledbetter v. State Dept. of Transp. and Dev., 482 So.2d 1035 (La.App. 3rd Cir.1986), affirmed, 502 So.2d 1383 (La.1986); Veazey v. Parish of Avoyelles, 476 So.2d 1057 (La. App. 3rd Cir.1985), writ denied, 478 So.2d 1238 (La.1985). Although a recent amendment to LSA-C.C. Art. 2324 effected by Act 373 of 1987 has changed the tort victim's right of recovery against joint tortfeasors, the accident giving rise to the case sub judice predates that amendment, therefore the holding in Forest v. State, La. Dept. of Transp., 493 So.2d 563, 571 (La.1986), a case which agreed with our earlier pronouncements in Ledbetter and Veazey, is applicable: "A public authority is liable in solido with a motorist when its negligence, combined with that of a motorist, is found to be the cause of the accident."
In determining the issue presented on appeal we first address whether the trial court erred in its determinations of fault or freedom from fault as to Mr. and Mrs. Adamson and the City of Lafayette. The trial court found that the City created an unreasonable risk of harm by not properly warning motorists that Dahlia Street was a dead-end road, and that Mr. Adamson was negligent by driving inattentively because he was intoxicated. The trial court also found no negligence on the part of Mrs. Adamson for riding with her husband. We have thoroughly reviewed the record and do not find the trial court manifestly erroneous in making these findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Moreover, the record convinces us that Mr. Adamson was intoxicated.
The crucial questions, however, are the degree of Adamson's intoxication and whether the trial court incorrectly concluded that because of Mr. Adamson's intoxicated condition he would not have heeded the warnings if the City had erected them. First, we find the record does not establish that Mr. Adamson was so inebriated that he was unable to function. Mr. Adamson admitted drinking alcoholic beverages during the course of the afternoon and evening preceding the accident, that he was inattentive, and that because he thought he was on another road, his speed was slightly excessive for a short, subdivision street. Although witnesses testified that Mr. Adamson had been drinking, no witness stated that he was so intoxicated that his senses were so impaired he was unable to function. Second, there is a presumption that had the appropriate signs been in place to warn plaintiff, he would have obeyed them. See Gadman v. State Through Dept. of Transp. & Dev., 493 So.2d 661 (La.App. 2nd Cir.1986), modified on other grounds, 497 So.2d 1001 (La.1986), and Willis v. Everett, 359 So.2d 1080 (La. App. 3rd Cir.1978), writ denied, 362 So.2d 800 (La.1978). Further, under Forest, supra at 570, it is clear that the governing *1262 authority has a duty to sign and mark roadways to alert unwary drivers to unusually perilous hazards. Mr. Adamson testified that had warning signs been in place, he would have obeyed them. After carefully reviewing the record, we find that the trial court's contrary conclusion is conjectural and unsupported by the evidence. Compare Kennison v. State Dept. of Transp., 486 So.2d 267 (La.App. 3rd Cir. 1986), writ denied, 489 So.2d 917 (La.1986). Accordingly, we find that the trial court erred by failing to apportion fault.

ALLOCATION OF FAULT
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), our Supreme Court offered direction to us in the apportionment of fault under a comparative fault system:
"`In determining the percentages of fault, the trier of fact should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.'
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertance or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties." 469 So.2d at 974.
The greater the risk of harm to others, the greater is the fault. Turner, supra at 714.
Applying this standard to the case sub judice, we conclude that between Mr. Adamson and the City the greater percentage of fault should be allocated to Mr. Adamson. The record shows that he was negligent in that: 1) he operated his automobile while in an intoxicated condition; 2) his inattentiveness placed him and his wife on a road other than the one intended; 3) he failed to maintain control of his vehicle after he encountered blinding lights from an oncoming automobile; and 4) he was driving in excess of the speed limit. On the other hand the City's conduct presented a risk only present at night, and because Dahlia Street is a short street in a residential subdivision, the risk it presented extends only to the few travelers unfamiliar with this thoroughfare.
After a careful review, we find the record justifies that Mr. Adamson was 70% at fault and that the City of Lafayette was 30% at fault.

QUANTUM
Because of its finding that Mr. Adamson was solely at fault, the trial court did not award damages. The complete record is before us, therefore, we shall decide what damages Mr. and Mrs. Adamson are entitled to. See Gonzalez v. Xerox, 320 So.2d 163 (La.1975).
Mrs. Adamson was 52 years of age at the time of the accident, and as a result of this accident she suffered injuries to her mouth, chin, jaw, neck, shoulder and knee.
Dr. Randolph B. Malloy testified that he treated Mrs. Adamson in the emergency room at Our Lady of Lourdes Hospital after the accident for the lacerations to her mouth and lip, and observed crack lines on four of her front teeth. Mrs. Adamson was not hospitalized.
During the next several months Dr. Joseph Caldwell and Dr. Jack Cormier treated Mrs. Adamson's cracked teeth. Dr. Caldwell testified that he performed two root canals on Mrs. Adamson as a result of the injuries to her teeth. Dr. Cormier testified that although Mrs. Adamson had seven chipped or cracked teeth which may require crowns, only four of the teeth needed crowns as a result of the accident.
For a number of years prior to the accident Mrs. Adamson was under the care of Dr. Malloy for the treatment of a temporomandibular *1263 joint dysfunction (TMJ), an ailment which causes pain in the jaw and headaches. The record shows that Mrs. Adamson's symptoms of TMJ had resolved two weeks prior to the accident, but Dr. Malloy had not released her. After the accident, Mrs. Adamson again complained of pain and discomfort in her jaw with associated headaches similar to those she experienced prior to Dr. Malloy's treatment. After thoroughly examining Dr. Malloy's testimony, we find that the accident aggravated Mrs. Adamson's pre-existing TMJ dysfunction.
Since March 15, 1983, prior to the accident Dr. Norman E. Anseman, Jr., a specialist in physical medicine and rehabilitation, treated Mrs. Adamson on referral from Dr. Malloy for muscle pain in the neck associated with TMJ. Dr. Anseman testified that although Mrs. Adamson was showing marked improvement prior to the accident of June 1983, his examination of her three days after the accident revealed neck spasm and he opined that she sustained an acute flexion/extension injury of her neck when she hit the windshield. At the time of trial he still found spasm in Mrs. Adamson's neck. Dr. Anseman concluded that even though he could not rule out a disc problem which existed prior to the accident, he nonetheless was firm in his conclusion that the accident aggravated Mrs. Adamson's neck problems.
Dr. J. Lee Leonard, an orthopedist, treated Mrs. Adamson approximately two months after the accident for problems she was having with her knees. Dr. Leonard found her knees swollen, and on the x-rays noted that there probably was pre-existing arthritis. He attributed an injury to the left knee (a contusion to her left kneecap) when she hit it in the accident; however, he concluded that the injury to the right knee occurred when she fell at home after the accident. He placed Mrs. Adamson on an exercise regimen, opined that the accident aggravated her arthritis, and that the contusion to the left knee caused by the accident resolved itself several months later.
Mrs. Adamson also sought damages for lost wages, past and future, permanent disability, and loss of earning capacity. We have examined the record and find that Mrs. Adamson failed to prove these damages by a preponderance of the evidence.
We find that an award of $40,000 general damages and $5,000 for medical expenses is appropriate in this case.
Mr. Adamson was thrown against the steering wheel and his head struck the windshield. At Lourdes Hospital, shortly after the accident, Mr. Adamson complained of pain in the head, chest, and stomach, and hospital personnel removed slivers of glass from his forehead. He remained in the hospital one extra day for observation of possible injury to the spleen.
At trial Mr. Adamson testified he remained sore for approximately six months and he took pain medication every once in a while. He was examined by two doctors after the accident, Dr. Kenneth Nix and Dr. Humphries. Only Dr. Nix testified, and his findings were consistent with the general complaints of Mr. Adamson. The only medical expenses proven at trial for Mr. Adamson was a $911.67 hospital bill incurred on the night of the accident.
Based on this evidence, we conclude Mr. Adamson is entitled to $2,500 general damages and $911.67 for medical expenses. Mr. Adamson's medical expenses were paid by State Farm. In keeping with the allocation of fault assigned hereinabove Mr. Adamson's award shall be reduced by 70%.

INTERVENTION
State Farm, the Adamsons' insurer, intervened in the Adamsons' demand against the City of Lafayette, seeking $4,817.46, the amount it paid in property damage to the Adamsons. It is entitled to receive reimbursement for $1,445.24, 30% of the amount of property damages which represents the percentage of fault allocated to the City.

CITY'S THIRD-PARTY DEMAND
The City of Lafayette filed a third-party demand against Mr. Adamson and his insurer, State Farm, seeking indemnity and contribution from them in the event it is *1264 cast in judgment. Since the trial court did not find the City at fault, its third-party demands were not reached. For reasons aforestated, we find the City was concurrently at fault (30%) with Mr. Adamson (70%), thus, the City is entitled to judgment on its third-party demand.
For the above and foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Jo Ann Adamson, and against the defendant, the City of Lafayette, in the sum of $45,000, with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Billy G. Adamson, and against the defendant, the City of Lafayette, in the sum of $3,411.67, with legal interest thereon from date of judicial demand until paid, subject to a 70% reduction to reflect the degree of fault allocated to plaintiff.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Third Party Plaintiff, the City of Lafayette, and against the Third Party Defendants, Billy G. Adamson and State Farm Mutual Automobile Insurance Company, for a sum equal to seventy (70%) per cent of any sums paid by Third Party Plaintiff in satisfaction of the judgment rendered against it in favor of Jo Ann Adamson, together with legal interest from the date of such payment by the City of Lafayette.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Intervenor, State Farm Mutual Insurance Company, and against the defendant, the City of Lafayette, in the full sum of $4,817.46 with legal interest thereon from date of judicial demand until paid, all subject to a 70% reduction to reflect the degree of fault allocated to its insured, Billy G. Adamson.
Costs of the trial and this appeal are assessed 70% to Billy G. Adamson and 30% to the City of Lafayette.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.