581 So.2d 325 (1991)
Rogers WYBLE, Plaintiff-Appellee
v.
ALLSTATE INSURANCE CO., et al., Defendants-Appellants.
No. 89-1244.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
*327 Morrow, Morrow, Ryan & Bassett, Patrick C. Morrow, Opelousas, for plaintiff-appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James E. Diaz, Jr., Lafayette, for defendants-appellants.
Roy & Hattan, L. Lane Roy, Lafayette, for defendant/appellant.
Before DOMENGEAUX, C.J., and GUIDRY and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff, Rogers Wyble, filed suit against defendants, Claude Guidry and Allstate Insurance Company, for bodily injuries he sustained in an automobile collision between a vehicle owned and operated by defendant, Guidry, and a vehicle owned and driven by Regis Wyble, in which plaintiff was a guest passenger. Plaintiff also sought penalties and attorney's fees pursuant to La.R.S. 22:658. Allstate provided both liability coverage of 10/20 to Guidry and 50/100 UM coverage concomitant with $5,000 medical coverage on the Regis Wyble vehicle.
At trial, the parties stipulated that the accident occurred solely as a result of the fault of Claude Guidry. The matter was tried to a jury.
The only issues at trial were the amount of plaintiff's damages and whether Allstate's actions were arbitrary and capricious, entitling him to an award of penalties and attorney's fees. The jury awarded a total of $53,000 in damages and concluded that Allstate's $5,000 tender to plaintiff made August 2, 1988 from the UM coverage was inadequate, justifying the imposition of penalties and attorney's fees. The trial judge accepted the jury's verdict, credited Allstate with $16,000 previously paid on the claim, assessed a penalty of 10% on the net award of $37,000 and set attorney's fees at $6,000.[1] Plaintiff and Allstate both appealed.
On appeal, Allstate urges error as follows: (1) the jury abused its discretion in finding Allstate arbitrary and capricious; (2) the trial judge erred when he instructed the jury that a UM carrier has an affirmative duty to investigate the extent of a claimant's damages; (3) the trial judge erred when he refused to instruct the jury that arbitrariness is determined only on the basis of the information known to the insurer at the time of tender; (4) the trial judge erred when he refused to include a jury interrogatory of what "minimum reasonable amount" should have been tendered; (5) the trial court erred when it allowed Allstate's adjuster to be questioned on her appreciation of UM law; (6) the jury inaccurately calculated the past medical expenses; and, (7) the trial judge erred when he assessed penalties on the entire net damage award instead of upon the difference *328 between the amount tendered and the minimum reasonable amount which should have been tendered.
On appeal, Rogers Wyble seeks an increase in the general damage award and the attorney's fee award.

ACCIDENT FACTS
Plaintiff, Rogers Wyble, is a 27 year old self-employed crawfisherman. On November 5, 1987, Rogers and his father, Wilfred Wyble, were guest passengers in a vehicle driven by his uncle, Regis Wyble. The Wyble truck collided with a vehicle owned and operated by defendant, Claude Guidry. Following the collision, the Wyble vehicle overturned in a ditch. Wilfred Wyble was killed instantly. Although, upon impact, Rogers braced himself with his right arm against the dash, the right side of his face and body hit the rear view mirror and shattered the windshield.
Claims were made on behalf of Wilfred's estate, Regis and Rogers against Allstate under Guidry's liability coverage and the Regis Wyble policy. Rogers filed suit against Guidry and Allstate in March 1988. Allstate early on determined that defendant, Guidry, was 100% at fault.

MEDICAL FACTS
Immediately after the collision, Rogers was transported by ambulance to the St. Luke's hospital emergency room. Rogers complained of a headache, blurred vision, left knee and right shoulder pain. Dr. Earl Morrogh took x-rays, prescribed Tylox and released Rogers the same day. Rogers later returned to see Dr. Morrogh complaining of daily migraine headaches, chronic neck, shoulder and right jaw pain. Dr. Morrogh referred Rogers to Dr. Daniel C. Dunlap, a neurologist.
Dr. Dunlap first examined Rogers on December 16, 1987. Dr. Dunlap's initial examination indicated tenderness of the right neck paraspinals and trapezius muscles. Dr. Dunlap's written evaluation of Rogers stated that he suffered head, shoulder and neck injuries with associated muscle spasms and a presumptive TMJ disorder. Dr. Dunlap prescribed a muscle relaxant, recommended physical therapy and ordered a CT scan and an EEG. The CT scan was normal, however, the mildly abnormal EEG, although not diagnostic, substantiated that Rogers suffered a concussion in the accident.
Dr. Dunlap treated Rogers for the next 9-12 months, primarily for chronic neck and shoulder pain, evidenced by spasm, and severe headaches. Physical therapy and steroid injections failed to alleviate Rogers' pain. In June 1988, Dr. Dunlap prescribed daily wear of a TENS unit, an electrical nerve stimulator which delivers a vibration to the skin and competes with the pain impulses to the spinal cord. By August 1988, Rogers' pain had migrated to the thoracic back area, right scapula and trapezius muscles. In September, ten months post-accident, Rogers still experienced chronic neck and shoulder pain and was referred to Dr. Norman E. Anseman, Jr., a physiatrist. Dr. Dunlap released Rogers at this time to do light duty work.
On Dr. Dunlap's recommendation, Rogers was seen by Dr. Olin Desonier, a dentist specializing in TMJ disorders. Dr. Desonier examined Rogers in January 1988. Dr. Desonier's report noted that Rogers suffered headaches, neck, jaw, ear and preauricular pain. Dr. Desonier referred Rogers to Dr. H.A. McConnell, an oral maxillofacial surgeon, for removal of four molars broken in the accident to isolate his possible TMJ disorder. Dr. McConnell examined Rogers in February 1988, noting a click and tenderness of the right TMJ, an old fracture of the lower left second bicuspid, swelling over the roots of the upper right molars, and an infection due to dental decay of the four right molars. On March 7, 1988, Dr. McConnell surgically removed Rogers' four right molars and the second bicuspid.
After the oral surgery, Rogers returned to Dr. Desonier in June 1988. Dr. Desonier performed an EMG scan, which objectively measures muscle activity. The EMG indicated a hyperaction of the sternocleidomastoid and cervical paraspinal muscles. The EMG results substantiated Rogers' complaints of chronic muscle pain. An occlusal *329 analysis revealed malpositioned teeth which evidenced nighttime bruxism.
Dr. Desonier's July 3rd medical report referred to the above findings and diagnosed Rogers with a displaced meniscus of the right temporomandibular joint, resulting in joint and muscle pain and traumatic dental malocclusion caused by missing and drifting teeth. Dr. Desonier determined that the accident precipitated Rogers' TMJ dysfunction. Dr. Desonier recommended 6-9 months of splint therapy to reduce the displacement and eliminate the effects of the dental malocclusion. He also recommended physical therapy for pain and referred Rogers back to Dr. Dunlap to receive a TENS unit to alleviate the muscle spasms. Dr. Desonier reserved a prognosis until the termination of splint therapy.
Dr. Robert Morrow, an orthopedist, also treated Rogers from January 1988 to March 1989. His initial examination revealed a decreased bulk of the deltoid shoulder muscles. Rogers had difficulty raising his right arm more than 90° and moving it away from his body. Dr. Morrow's preliminary diagnosis was a possible internal derangement of the right glenohumeral joint versus a brachail plexus injury, the auxillary nerve which supplies the shoulder muscle. In January 1988, Dr. Morrow performed an arthogram which revealed a normal rotator cuff. In February, he asked Dr. James Domingue to perform an EMG which indicated healthy brachail plexus. By April of 1988, Dr. Morrow concluded Rogers had soft tissue injury and prescribed Naprosyn, an anti-inflammatory agent to alleviate Rogers' pain. He intermittently injected the bursa with steroids to reduce the inflammatory response. Over several months, Dr. Morrow prescribed cortisone, indocin and valium in an attempt to relieve Rogers' chronic neck and shoulder pain. In May 1988, Dr. Morrow concluded that Rogers' subacromoil bursitis was caused by the November 1987 accident.
In the one and one-half years between the accident and trial, Rogers was regularly treated by four medical specialists for chronic muscle spasms in his neck, shoulder, lower back, right TMJ and for intermittent migraine headaches. Despite physical therapy and medication, Rogers complains that he has trouble eating certain foods and difficulty in sleeping, lifting or working. He stated that he is constantly aware of his pain and wears a TENS unit and jaw splints daily.

QUANTUM
Plaintiff urges that the jury abused its discretion in awarding only $25,000 in general damages to Rogers Wyble.
The Louisiana Supreme Court established the standard of appellate review of awards for damages in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976):
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc. [304 So.2d 351 (La. 1974)], supra; Bitoun v. Landry [302 So.2d 278 (La.1974)], supra; Fox v. State Farm Mutual Automobile Ins. Co. [288 So.2d 42 (La.1973)], supra; Walker v. Champion, [288 So.2d 44 (La. 1973)], supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc. [294 So.2d 803 (La.1974)], supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
The record reflects that Rogers Wyble is 27 years old and has a 7th grade education. Except for some decayed teeth, Rogers was healthy before the accident. Rogers testified that his accident related injuries have seriously affected his ability to pursue his job as a crawfisherman. Rogers *330 has not worked full time since the November 1987 accident. In August 1988, Dr. Morrow opined that Rogers was temporarily totally disabled.
Rogers has suffered from soft tissue injuries, TMJ dysfunction and associated chronic pain since the accident. The medical evidence confirms that Rogers' loss of teeth, muscular and TMJ pain are accident related. Rogers testified that he still experiences blackouts, headaches, and chronic pain. He wears his splints and TENS unit daily.
The jury awarded Rogers $25,000 in general damages. A $25,000 general damage award, under the circumstances of this case, is not a clear abuse of the jury's discretion. Adamson v. City of Lafayette, 521 So.2d 1258 (La.App. 3rd Cir.1988), writ denied, 526 So.2d 798 (La.1988); Kimble v. Wal-Mart Stores, Inc., 527 So.2d 1163 (La. App. 3rd Cir.1988), aff. in part, amended in part, 539 So.2d 1212 (La.1989); Koury v. Lanier Exp., Inc., 528 So.2d 734 (La.App. 3rd Cir.1988); Hardin v. Munchies Food Store, 521 So.2d 1200 (La.App. 2d Cir.1988), writ denied, 523 So.2d 1321 (La.1988). We cannot say that the award falls below the lowest award which was reasonably within the discretion of the jury. The plaintiff's general damage award of $25,000 will not be disturbed.
Allstate next urges that the jury abused its discretion in awarding $15,000 for future medical expenses. Dr. Morrow's testimony established the probability that Rogers would require at least one year of aggressive physical therapy, three times weekly, to overcome pain and muscle spasms. He testified that Rogers would need 2-3 years to completely recover from his injuries. Dr. Morrow testified that orthopaedic visits cost between $35.00 and $52.00. The record reflects that physical therapy could cost approximately $100 weekly. At trial, Dr. Desonier opined that surgical realignment of the jaw and long term orthodontic treatment, costing between $8,000 and $15,000, was a medical probability. Rogers' treatment also necessitates various analgesic, antiinflammatory and pain medications.
We cannot say that because Rogers has not yet had the recommended treatment, that he will not undergo physical therapy nor surgical and orthodontic realignment of his jaw. The jaw reconstruction alone could, according to the evidence, cost $15,000. We conclude that the jury did not abuse its discretion in awarding plaintiff $15,000 in future medical expenses.
Allstate also maintains that the past medical award should be reduced because plaintiff failed to prove $10,000 in past expenses. Plaintiff's medical expense exhibit incorrectly lists Dr. Dunlap's total bill as $2,290, the correct total is $2,090. Also, the jury erred in rounding past medicals to an even $10,000. We find that the actual medical expenses proven were $9,591.58. Thus, we find the judge erred in accepting the jury's award for past medical expenses. The trial court's judgment will be amended to reduce the award for past medical expenses to the sum of $9,591.58.

PENALTIES AND ATTORNEY'S FEES
Allstate urges that the jury abused its discretion in awarding plaintiff penalties and attorney's fees, pursuant to La.R.S. 22:658. In this connection, Allstate urges that the $5,000 tender it made to Rogers on August 2, 1988 was reasonable and satisfied its statutory obligation.
At the time plaintiff's claim arose, La.R.S. 22:658 provided for attorney's fees and a 10% penalty on the difference between the amount tendered and the amount found to be due when a UM carrier arbitrarily and capriciously fails to tender payment on a claim within 60 days after receipt of demand and satisfactory proof of loss.[2] The provisions of the statute are punitive and must be strictly construed. McDill v. Utica Mutual Ins. Co., 475 So.2d 1085, 1092 (La.1985). The sanctions imposed *331 by the statute should only be imposed when the facts negate a probable cause for non-payment. Scott v. Insurance Company of North America, 485 So.2d 50, 53 (La.1986). The plaintiff bears the burden of establishing that the insurer's failure to pay a reasonable sum is arbitrary. Hastings v. So. Nat. Ins. Co., 554 So.2d 221, 225 (La.App. 2d Cir.1989).
In McDill, supra, the Supreme Court stated:
"La.R.S. 22:658 has been held to apply to uninsured or underinsured motorist's claims. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983). A claimant for penalties and attorneys fees under the statute has the burden of proving that the insurer failed to pay the claim within 60 days after receiving `satisfactory proof of loss' of the claim, and that the insurer was arbitrary or capricious in failing to pay. A `satisfactory proof of loss' within the meaning of La. R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured's claim. Hart v. Allstate Ins. Co., supra. To establish a `satisfactory proof of loss' of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages. Hart v. Allstate Ins. Co., supra."

McDill, supra, at 1091, 1092.
Claude Guidry, owner-operator of the other vehicle involved in the accident, had liability coverage of only 10/20. Allstate, who provided this primary coverage, also provided a 50/100 UM and a $5,000 medical payments policy to Regis Wyble. As the insurer of both drivers, Allstate was acutely aware that Rogers, Regis and Wilfred's estate all had claims against the primary insurance limits of 10/20. On November 24, 1987, plaintiff's counsel notified Allstate of Rogers' claim, indicating the claim would exceed the limits of the primary coverage. At that time, Allstate clearly should have realized that Guidry was underinsured.
Within a month of the accident, Allstate determined that the accident occurred solely as a result of Guidry's negligence. At trial, Allstate stipulated to its liability.
The McDill court defined the insurer's responsibility under such circumstances as follows:
"If the insured has shown that he was not at fault, the other driver was uninsured/underinsured and that he was in fact damaged, the insurer cannot stonewall the insured because the insured is unable to prove the exact extent of his general damages. General damages by their very nature are subjective and incapable of exact computation. To accept the defendant's position that no amount must be tendered unless the exact extent of general damages is proven renders the 4th element of the Hart test meaningless as it places an impossible burden on the plaintiff prior to going to trial. If the first three elements of the Hart test are satisfied and the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount which is due. This amount would be unconditionally tendered to the plaintiff not in settlement of the case, but to show their good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured. The amount that is due would be a figure over which reasonable minds could not differ." (Emphasis ours).
McDill, supra, at 1091 and 1092.
The issue thus becomes whether, under the circumstances, Allstate's $5,000 tender constitutes a reasonable tender.
We observe initially that an insurer does not comply with its obligation under R.S. 22:658 by simply making a tender. Rather, the tender must be made, considering the facts known to the insurer at the time of tender, in an amount over which reasonable minds could not differ was due the claimant. In the case sub judice, the jury apparently concluded that Allstate's *332 tender was not a reasonable tender. This determination is essentially factual and should not be disturbed on appeal absent manifest error. Scott, supra.
Allstate's tender was made on August 2, 1988, almost nine months post-accident. During this nine month period, Rogers' medical expenses almost exceeded the med pay coverage available and was actually depleted by August 8, 1988, six days post-tender. Allstate was aware or should have been aware at that time that Rogers would incur additional medical expenses in connection with his soft tissue injuries and TMJ dysfunction. Allstate was also aware on August 2, 1988 that, as a result of the accident, Rogers had lost four teeth, albeit decayed; had suffered for nine months from chronic neck and shoulder pain which required daily use of a TENS unit; and, suffered from an unresolved TMJ dysfunction which, at the very least, would require 6-9 months of splint therapy. Allstate was also aware from Dr. Dunlap's early report that Rogers had sustained some loss of earning capacity.
Allstate was also keenly aware of the limited fund available under the Guidry liability coverage which was completely depleted with the payment of $6,000 to Rogers.
Considering the information known to Allstate on August 2, 1988, we can discern no clear error in the jury's determination that Allstate was arbitrary in tendering only $5,000 to its UM insured. Although the insurer has no duty or obligation to fully investigate the exact extent of a claimant's damages, it must maintain a degree of expertise commensurate with its obligation to reasonably assess damages sustained by its insured and if the factors alluded to in McDill are satisfied, tender an amount over which reasonable minds could not differ.
Allstate urges error in a portion of the trial judge's instructions to the jury. We deem a discussion of these errors unnecessary as we are convinced that any such errors were harmless and did not contribute to the jury's ultimate determination. In any event, were we to find otherwise, our review of the record would prompt us to affirm the trial court's judgment. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
Allstate also urges that the trial judge erred in allowing its adjuster to be questioned on her appreciation of the UM law. The trial judge properly instructed the jury that Ms. Primeaux's testimony was offered to show her good faith and did not necessarily conform to Louisiana law. We find no merit to this assignment of error.
Lastly, Allstate urges that the trial judge's assessment of penalties on the entire net award is error. The statute clearly provides that in the event a partial payment or tender has been made, the penalty of 10% shall be assessed on the difference between the amount paid or tendered and the amount found to be due. La.R.S. 22:658(B)(1). Thus, the trial court's refusal to interrogate the jury concerning the minimum reasonable amount which should have been tendered was not error. A determination of the minimum reasonable amount is relevant only when considering whether the insurer was arbitrary and capricious. Once that is determined, penalties are assessed on the difference between the amount tendered and the amount found to be due.

ATTORNEY'S FEES ON APPEAL
Plaintiff seeks an increase in the award of attorney's fees to compensate for his attorney's services on appeal. We will allow plaintiff an additional $1,000 for attorney's fees on appeal.

DECREE
The judgment of the trial court is amended to reduce the award for past medicals from $10,000 to $9,591.58 and to increase the attorney's fees from $6,000 to $7,000. In all other respects, the judgment of the trial court is affirmed. Allstate Insurance Company is cast with all costs of this appeal.
AFFIRMED AS AMENDED.
*333 DOMENGEAUX, C.J., concurs in part and dissents in part, and assigns reasons.
DOMENGEAUX, Chief Judge, concurring in part and dissenting in part.
I agree with the majority opinion except the portion which awards an additional $1,000 to plaintiff as attorney's fees for services on appeal.
In this case, the defendants appealed the basic case, but the plaintiff also appealed seeking an increase in the general damages award, which we deny herein. Consequently, plaintiff should not be awarded an extra fee. Our circuit has so stated a number of times. See Conlay v. Houston General Insurance Co., 370 So.2d 196 (La.App. 3rd Cir.1979); Ebey v. Dolphin Construction Co., 435 So.2d 1154 (La.App. 3rd Cir.1983).
Additionally, but not as significant, is the fact that the defendant prevailed in having us reduce the past medical bill award from $10,000.00 to $9,591.58.
Since in our case, the plaintiff is not only protecting his own rights because of the defendants' appeal, but is also seeking additional relief which was not granted by the trial court, i.e., an increase in the award for damages, which we are also denying here, an award of additional attorney's fees for services on appeal would not be in order under the cases cited.
NOTES
[1] Prior to trial, Allstate paid to or on behalf of Rogers Wyble $5,000 in medical expenses, $6,000 from the Guidry liability coverage and $5,000 from the Regis Wyble UM coverage.
[2] La.R.S. 22:658, amended by Acts 1986, No. 132, sec. 1, effective June 26, 1986. The statute now provides for 10% penalties and attorney's fees for failure to pay within 30 days after receipt of demand and satisfactory proof of loss. Amended by Acts 1990, No. 262, effective July 4, 1990.