670 So.2d 238 (1996)
Patrick PATIN and Carolyn Patin, Plaintiffs-Appellants,
v.
IMPERIAL LLOYDS INSURANCE COMPANY, et al., Defendants-Appellees.
No. 95-841.
Court of Appeal of Louisiana, Third Circuit.
January 17, 1996.
*240 James Steven Gates, Opelousas, for Patrick Patin.
Jeigh L. Stipe, Opelousas, for George James Robins and LIGA.
Peter Forrestt Caviness, Opelousas, for State Farm Mutual Automobile Insurance Co.
Before KNOLL, THIBODEAUX, and AMY, Judges.
THIBODEAUX, Judge.
In this suit for personal injury damages and a spouse's loss of consortium claim arising out of an automobile accident, plaintiffs, Patrick and Carolyn Patin, appeal the judgment of the trial court against the Patins' underinsured motorist (UM) carrier, State Farm Mutual Automobile Insurance Company. The jury's verdict, $53,769.12, they claim, was an abuse of its discretion.
The jury awarded $18,769.12 for past and future medical expenses and $35,000.00 for past and future physical and mental pain and suffering, but refused to compensate the Patins for Mr. Patin's permanent physical disability, past and future loss of wages, earnings, and/or diminished earning capacity. The jury also declined to award any amount for Mrs. Patin's loss of consortium. Furthermore, the jury found that State Farm did not unreasonably fail to make a good faith tender of damages to the Patins.
We affirm.

ISSUES
The first issue is whether the jury's damage award to Mr. Patin was abusively inadequate. The next issue is whether the jury committed manifest error in finding that Mrs. Patin did not suffer a loss of consortium. The last issue is whether the jury erred in its determination that State Farm did not unreasonably fail to make a reasonable, good faith tender of damages to the Patins, thereby denying the Patins' claim for penalties and attorney's fees pursuant to La. R.S. 22:658.

FACTS
Patrick Patin was rear-ended by a vehicle driven by George Robins. The parties stipulated that Robins was the sole cause of the accident. The accident appeared to be relatively minor. Patin and Robins drove their vehicles from the scene of the accident, and no one reported any injuries to the investigating officer.
Dr. Joseph Deshotels, Patin's family physician, examined Patin ten days after the accident. He noted some tenderness in Patin's lower back which was compatible with a bad muscle sprain or central ruptured disk. Because there was no evidence of neurological deficit, Dr. Deshotels decided to treat Patin's back conservatively. Dr. Deshotels' treatment continued through May of 1991 when he recommended that Patin see Dr. John Cobb, an orthopedist, and Dr. John Jackson, a neurosurgeon, because of a possible injury to Patin's spinal cord or to his spinal nerves which caused Patin's continued complaints of pain.
Dr. Cobb treated Patin for approximately six months and diagnosed a soft tissue type injury with some underlying degeneration of the cervical spine. Neurologically, Dr. Cobb found Patin to be normal. An MRI of the spine indicated a small canal in his neck, but no herniation was revealed, although there were significant changes in his facet joints. Facet joints are those joints which connect the back together at the lower lumbar area. According to Dr. Cobb, Patin's degenerative joints were the source of pain. Dr. Cobb recommended an exercise program with a physical therapist in order to loosen the joints. Patin opted to try an exercise program at home. Dr. Cobb also recommended steroid injections to relieve the back pain, but Patin did not follow up on this suggestion. He was then released without restrictions on his activities.
Patin failed to tell Dr. Cobb that he had been involved in two previous vehicular accidents. Both accidents caused back injuries.
*241 Dr. Jackson ordered several diagnostic tests: a standard neurological examination, lumbar and cervical MRI scans, a CAT scan, and a myelogram. The results of the myelogram were normal and the CAT scan showed a small, lateral bulging disk at the L-4, 5 level. However, Dr. Jackson felt the disk was not causing any difficulty. A disk bulge at the L-5, S-1 level which slightly touched the dura could cause some of the symptoms and complaints voiced by Patin, according to Dr. Jackson. The MRI was completely normal.
In March, 1994, Mr. Patin fell and injured his knee. He attributed this fall to a painful back spasm. Dr. Robert Morrow, an orthopedist, found several cartilage tears and recommended arthroscopic surgery on the knee.
Mr. Patin saw several doctors for evaluation purposes only. Not surprisingly, there was conflicting testimony as to Mr. Patin's condition and as to whether his knee problem was caused by his back problem. Dr. Herbert Dyer, a rheumatologist and internal medicine specialist hired by State Farm, found no muscle spasms in Mr. Patin's back. Tenderness in Mr. Patin's lower back was Dr. Dyer's only abnormal finding. Dr. Dyer felt there was nothing abnormal in Mr. Patin's previous MRI. Dr. Dyer felt the mild osteoarthritis was compatible with Mr. Patin's age. Dr. Miguel Garcia, also a rheumatologist who evaluated Mr. Patin at the request of Mr. Patin's attorney, found that Mr. Patin suffered osteoarthritis. Dr. James McDaniel who evaluated Mr. Patin at the request of State Farm, found nothing wrong with Mr. Patin's back. Unlike Dr. Dyer, Dr. Garcia testified that Mr. Patin's facet joint osteoarthritis was an indication of prior trauma although he could not relate it to the December 1990, accident. Dr. Garcia recommended that Mr. Patin attend a pain management clinic at Touro Infirmary in New Orleans, Louisiana. All of Mr. Patin's doctors felt that his complaints of back pain were out of proportion with their findings. None of the doctors recommended surgery for Mr. Patin's back.
From the time of the accident in December of 1990, Mr. Patin continued to work at his scrap metal business in Baton Rouge until September 1993, when he sold his business to his brother.
In August of 1992, State Farm tendered $35,000.00 to the Patins. Pursuant to the medical payments portion of the Patins' liability policy, State Farm paid the medical bills incurred by Mr. Patin in the amount of $13,207.12.

LAW AND DISCUSSION

Issues 1 and 2:
The Patins assert that the jury's verdict is grossly inadequate and an abuse of discretion.
The jury sat as the trier of fact in this case. The jury's conclusions on the Patins' damage claims were based on inferences drawn from the testimony and evidence. The jury has much discretion in the evaluation of expert witness testimony. Grady Roper Drilling v. Transcontinental, 586 So.2d 707 (La.App. 3 Cir.), writ denied, 590 So.2d 592 (1991). In weighing expert opinions, the trier of fact should consider, among other things, other evidence which supports or detracts from those opinions. Whittle v. Miller Elec. Mfg. Co., 507 So.2d 266 (La.App. 3 Cir.1987).
Mr. Patin testified that he injured his knee when his back gave out. Dr. Morrow testified that Mr. Patin needed surgery to remove the torn cartilage in his knee. Dr. Morrow further testified that the surgery would cost between $4,800.00 and $6,000.00. Dr. Garcia, who saw Mr. Patin once in order to evaluate his back pain and the need for future treatment, testified that Mr. Patin is a chronic pain patient. He recommended that Mr. Patin attend a pain clinic where he could be seen by psychologists because Mr. Patin's complaints of pain were not supported by his medical records. The pain clinic was also recommended because Mr. Patin has suffered for a long period of time with pain. Specifically, Dr. Garcia recommended the Touro Infirmary Pain program at an approximate cost of $15,000.00 to $21,000.00. Dr. Dyer, on the other hand, saw no need for Mr. Patin to attend a pain clinic. He failed to even find a soft tissue injury at the time of *242 his examination. Mr. Patin never participated in any professionally conducted out-patient physical therapy program as recommended by his physicians, preferring instead to exercise at home. On March 24, 1992, Mr. Patin saw Dr. Deshotels for an examination in connection with an application for a commercial driver's license. Mr. Patin received a clean bill of health at that time. Dr. Deshotels noted that it was permissible for Mr. Patin to drive any type of vehicle. This testimony was in contrast to Mr. Patin's testimony that he could not drive his truck to Baton Rouge. Furthermore, Mr. Patin continued to work, driving back and forth to Baton Rouge, until September of 1993. Mr. Robins testified that the accident was relatively minor. Officer Pearson agreed with Mr. Robins' assessment of the severity of the accident, and the damage to the vehicles coincides with Officer Pearson's assessment. Mr. Patin's physicians all agreed that Mr. Patin suffered only soft tissue injury from the accident that would resolve with conservative treatment. Although Mr. Patin suffered from osteoarthritis, Dr. Garcia did not relate any pain associated with that condition to the accident. Moreover, a review by Dr. Jackson of an MRI ordered September 6, 1994, revealed no bulging disks. Dr. Deshotels gave Mr. Patin the only restriction on his activityno heavy lifting. Mr. Patin testified that very rarely, in his business, does he have to lift anything since he has employees who lift for him.
When specific treatment was recommended, Mr. Patin would refuse. Dr. Cobb recommended steroid injections to relieve the pain but Mr. Patin did not take the injections because, he claimed, the injections had not worked for him in the past. However, Dr. Deshotels testified that Mr. Patin received injections from him for a prior back injury with good results.
There was a great deal of conflict in the testimony. Mr. Patin's credibility was also called into question. Mr. Patin failed to acknowledge the results of his commercial driver's license examination. Further, Mr. Patin failed to give, even his own doctors, a complete history of his prior motor vehicle accidents and resultant injuries.
The inference to be drawn from the jury's verdict as to Mr. Patin's claims is that Mr. Patin was slightly injured by the car accident of December 28, 1990, and he suffered some pain and will incur some future medical expenses related to alleviating his intermittent back pain. Also, the inference drawn from the jury's verdict is that Mr. Patin's knee injury had nothing to do with the December 1990 accident because his back problems had resolved; therefore, any medical expenses associated with treatment of his knee, past and future, should not be paid by State Farm. The further inference is that Mr. Patin does not need a pain clinic since he has previously refused both physical therapy and injections. We are convinced that the jury's failure to award any amount for Mr. Patin's knee surgery and attendance at the Touro Pain Clinic as well as its failure to award any amount for permanent physical disability was not manifestly erroneous. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Also, the jury award for mental and physical pain and suffering and future medical expenses was not an abuse of discretion.
The Patins also assigned as error the jury's failure to award any amount for Mr. Patin's loss of past and future wages, earnings, and earning capacity. State Farm contends that the jury's refusal to compensate Mr. Patin for his loss of earnings and earning capacity is fully supported by the evidence at trial.
As to the loss of earnings claim, Mr. Patin continued to work at his business until September of 1993. According to Dr. Deshotels' examination conducted in connection with Mr. Patin receiving a commercial driver's license, Mr. Patin's back problems resolved in March of 1992. Thus, the jury was not manifestly erroneous in its finding that Mr. Patin did not lose any earnings. As to his future loss of earnings, the jury could have found that Mr. Patin's knee problems necessitated the sale of his business to his brother.
To obtain an award for impaired earning capacity, a claimant must present medical evidence which indicates there could *243 be a residual disability causally related to the accident. Bowers v. Viator, 625 So.2d 355, 360 (La.App. 3 Cir.1993), writ denied, 633 So.2d 171 (La.1994). The only doctor to testify as to Mr. Patin's residual disability was Dr. Morrow, who saw Mr. Patin about his knee. Dr. Morrow testified that Mr. Patin's percentage of disability depended upon the pathology he found in the knee during surgery. Furthermore, Mr. Patin was never told that he could not work and did in fact continue to work in his scrap metal business and passed the physical exam to become a commercial driver. The testimony of Patin's economist, Dr. Pettingill, is flawed because it does not consider that Mr. Patin failed to present medical evidence that he was disabled from the car accident of December 1990, and was in fact attempting to get into another line of business by March of 1992. See Johnson v. Masur, 493 So.2d 881 (La.App. 3 Cir.1986).
The jury could have reasonably concluded that Mr. Patin's back problems resolved in 1992 and that his knee problems were not related to the December 1990, car accident. In the absence of evidence that Mr. Patin's symptoms were disabling or that there was a dim prospect for his future employment, the jury was neither manifestly erroneous nor clearly wrong in failing to grant the Patins an award for loss of Mr. Patin's earning capacity. Id. For the foregoing reasons, we find the trial court committed no error in refusing to grant the Patins' post-trial motions on these grounds.

Issue 3
The jury's conclusion as to Mrs. Patin's loss of consortium claim is a question of fact. Thus, the issue to be resolved by this court is not whether the jury was right or wrong in concluding that Mrs. Patin did not suffer a loss of consortium as a result of the December 28, 1990 accident, but whether the jury's conclusion was a reasonable one, even though we may feel our own evaluations and inferences are more reasonable. This court may not set aside the jury's finding of fact in the absence of manifest error. Reasonable evaluations of credibility should not be disturbed upon review where conflict exists in testimony. Stobart, 617 So.2d at 882.
There was ample evidence in the record tending to show that the Patins' relationship had not diminished as a result of the December 1990, car accident. Mr. Patin was able to continue working for almost three years subsequent to the accident. The record also reveals that without taking the injections or the proper physical therapy as prescribed by his doctors, Mr. Patin was able, in March 1992, to pass a physical exam which declared him fit to drive any type of vehicle. We are not persuaded to disturb the verdict of the jury as to Mrs. Patin's loss of consortium.

Issue 4
The Patins assert that State Farm acted unreasonably in handling their claim. In this claim, State Farm urges that the $35,000.00 tender it made to the Patins in August of 1992 was reasonable and satisfied its statutory obligation.
Louisiana Revised Statute 22:658(A) requires all insurers to pay any amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The plaintiff, insured, has the burden of proving that the insurer was given satisfactory proof of loss, which includes the extent of the injury. Daney v. Haynes, 630 So.2d 949 (La.App. 4 Cir.1993). Paragraph B of that statute provides that arbitrary and capricious failure to make such payments without probable cause, shall subject the insurer to a penalty in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured together with reasonable attorney fees for the prosecution of such loss. La.R.S. 22:658(B)(1). The provisions of the statute are punitive and must be strictly construed. McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La.1985). The sanctions dictated by the statute should be only imposed when the facts negate a probable cause for non-payment. Wyble v. Allstate Ins. Co., 581 So.2d 325 (La.App. 3 Cir.1991). The burden of *244 establishing that the insurer's failure to pay a reasonable sum within the statutory time limit is on the plaintiff. Id.
A fact finder's conclusion concerning the assessment of statutory penalties and attorney's fees is, in part, a factual determination. In the absence of manifest error, the fact finder's determination should not be disturbed. LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3 Cir.1990), writ denied, 575 So.2d 391 (La.1991).
Where there is a reasonable disagreement between the insured and the insurer as to the amount of a loss, the insurer's refusal to pay is not arbitrary, capricious, or without probable cause, and failure to pay within the statutory delay does not subject the insurer to penalties. However, if part of a claim for damages is not disputed, failure of the insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to liability for penalties on the entire claim. To avoid the imposition of penalties and attorney's fees, the insurer must tender to the insured, unconditionally, that part of the claim for which there is no dispute. Id. The tender must be made, considering the facts known to the insurer at the time of tender, in an amount over which reasonable minds could not differ was due to the claimant. Wyble, 581 So.2d at 331. In this case, the jury apparently concluded that the timing of State Farm's tender was reasonable.
We conclude that the jury was not clearly wrong in failing to award Patin penalties and attorney's fees. There are several factors in the record which clearly establish a reasonable basis for the jury to conclude that Mr. Patin failed to prove that State Farm was provided with satisfactory proof of his loss prior to 30 days before August 1992, namely: (1) the extent of his injuries were the center of dispute; (2) he was being evaluated by several physicians during this period to ascertain the true nature of his injuries; (3) he failed to introduce at trial what medical reports, if any, that State Farm had in its possession; what these medical reports indicated regarding the extent of his injuries; and that diagnoses were given in the reports; (4) the record does not contain documentary and objective evidence of what medical information State Farm had prior to 30 days before August 1992; (5) he had been involved in two prior accidents in which he had suffered back injuries; and (6) he continued to work at his scrap metal business until September 1993. Concerning a tender for Mr. Patin's knee injury, we find that State Farm was not unreasonable; there were serious questions as to whether Mr. Patin's knee injury, which occurred almost four years after the car accident and almost two years after his physical exam revealed that his back problem resolved, was related to the December 1990 accident.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiffs-appellants, Patrick and Carolyn Patin.

AFFIRMED.
THIBODEAUX, J., author of the majority opinion, dissents with written reasons on the issue of whether State Farm acted unreasonably in handling this claim, thereby subjecting it to penalties and attorney's fees.
THIBODEAUX, Judge, dissenting in part.
I dissent from the majority's conclusion that State Farm's tender was reasonable.
State Farm never disputed that Robins was totally at fault for causing the accident. It was further never disputed that Mr. Patin suffered physical injuries as a result of the car accident. The dispute centered on the extent of Mr. Patin's injury. State Farm first became aware of Mr. Patin's claim in August, 1991, eight months after the accident. Robins' insurance company went bankrupt within a couple of months after the December, 1990 accident; therefore, State Farm was aware of its UM coverage applicability. State Farm paid all of Mr. Patin's medical bills submitted to it under the policy, with the exception of those bills related to Mr. Patin's knee. Thus, State Farm was aware of Mr. Patin's medical expenses. State Farm contends that because of the conflicting medical reports, the fact that Mr. *245 Patin continued to work, and because his attorney assured it that additional medical reports would be forthcoming, there were serious questions concerning the nature and extent of Mr. Patin's injuries. However, there was no question that Mr. Patin sustained soft tissue injuries as a result of the accident. I find State Farm's tender of $35,000.00 for Mr. Patin's injury to his back in August of 1992some 21 months after State Farm began handling the casealthough reasonable in amount, was unreasonable in regard to the time it was tendered. Concerning a tender for Mr. Patin's knee injury, I find that State Farm was not unreasonable; there were serious questions as to whether Mr. Patin's knee injury, which occurred almost four years after the car accident and almost two years after his physical exam revealed that his back problem resolved, was related to the December 1990 accident.
State Farm's failure to timely tender the $35,000.00 was arbitrary and capricious and without probable cause. It should be liable, therefore, for penalties and attorney's fees. State Farm should pay a penalty in the amount of ten percent of the entire jury award of $53,769.12. Mr. Patin's attorney is entitled to a reasonable fee for the services he provided. La.R.S. 22:658(B)(1). Pursuant to La.Code Civ.P. art. 2164, this court shall render any judgment which is just, legal and proper upon the record on appeal. Counsel for the Patins vigorously pursued and obtained some of the relief the Patins requested, participated in eight depositions, filed pre-trial memoranda, participated in a summary judgment hearing, prepared for and participated in the jury trial, filed several motions after trial, and researched and filed an appellate brief. Given the work performed and the result obtained at trial, $8,000.00 would be a reasonable attorney's fee in this case. See Funk v. Louisiana Underwriters Insurance Co., 613 So.2d 1018, 1022-1023 (La.App. 3 Cir.), writ denied, 616 So.2d 705 (La.1993).
For the foregoing reasons, I respectfully dissent.